IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA | : | |
| ex rel. DONALD F. PALMER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO.: |
| v. | : | 2:12 CV 00907 (GP) |
| | : | |
| C&D TECHNOLOGIES, INC., | : | |
| | : | |
| Defendant. | : | |

## OPPOSITION TO RELATOR'S
## MOTION FOR AWARD OF ATTORNEY'S FEES AND EXPENSES

McCARTER & ENGLISH, LLP

Thomas J. Finn
Paula Cruz Cedillo
Attorney ID Nos. (Pro Hac Vice)
CityPlace I, 36th Floor
185 Asylum Street
Hartford, Connecticut 06103
Tel.: 860.275.6700
Fax: 860.724.3397
tfinn@mccarter.com
pcedillo@mccarter.com

- and -

Michael J. Glasheen
Katelyn M. Gillece
Attorney ID Nos. 17153, 207061
BNY Mellon Center
1735 Market Street, Suite 700
Philadelphia, PA 19103-7501
Tel.: 215.979.3800
Fax: 215.979.3899
mglasheen@mccarter.com
kgillece@mccarter.com

## INTRODUCTION

Pursuant to Rule 7.1 of the Local Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania, Defendant C&D Technologies, Inc. ("C&D") submits this Opposition to Relator's Motion for Award of Attorneys' Fees and Expenses, August 19, 2016 ("Motion") (Dkt. No. 138).

Relator Donald F. Palmer ("Relator") seeks to recoup an astounding $3,278,115.99 in attorneys' fees and expenses for having pursued a meritless case against C&D.  Relator argues his attorneys are entitled to such an astronomic sum because he was left to dutifully litigate this case on the Government's behalf for over 4 years because C&D refused to settle the matter at the outset of the case.  Relator would have the Court ignore that the Government declined to intervene because it had no interest in pursuing this meritless action, as is objectively evidenced by the fact that: (1) the action *failed to effect any change whatsoever* to the manufacturing process Relator claimed was fraudulent; (2) the Government continues to purchase the missile batteries in increasing volume; and (3) the Government continues to waive inspection of C&D's products that Relator claimed were nonconforming.  Relator would also have the Court ignore that, after all these years of protracted litigation, the parties ultimately settled for essentially the same sum that Relator unreasonably demanded at the outset.  In litigating this case, Relator accomplished nothing more than amass an inordinate amount of attorneys' fees for the benefit of his counsel.

Furthermore, in seeking an award of over $3 million in attorneys' fees and expenses, Relator ignored the Court's prior admonitions to use current CLS rates and to not extrapolate the rates sought.  Indeed, there is absolutely no basis to do so.  Relator also failed to heed the Court's directives to reduce unnecessary hours and time.  Instead, the number of hours Relator seeks

1

payment for remains excessive, redundant, and unreasonable.  C&D respectfully submits that the Court must not countenance Relator's opportunistic pursuit of a big payout at C&D's expense.

In sum, Relator's claim for attorneys' fees should be rejected because: (1) the requested fees are not justifiable considering the result obtained; (2) the rates claimed are unsupported and unreasonable; and (3) the hours claimed are unreasonable and excessive.  Accordingly, an award to Relator of reasonable attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d)(2) in this matter should be $164,585.49 for costs and expenses[1] and no more than $1,566,965.21 for attorneys' fees, for a total of $1,731,550.70.

## FACTS

**Overview**

Relator commenced this action by filing a Qui Tam Complaint under seal on February 21, 2012, alleging violations of the False Claims Act, 31 U.S.C. §§ 3729 - 3733 ("FCA").  *See* Qui Tam Complaint, February 21, 2012 (Dkt. No. 1).  Following a criminal investigation, the Government closed the investigation and took no action against C&D, determined not to intervene in the case, and filed a Notice of Election to Decline Intervention on August 5, 2013. *See* United States Notice of Election to Decline Intervention, August 5, 2013 ("Notice of Declination") (Dkt. No. 12).  Notwithstanding the Government's declination, Relator decided to pursue this action anyway.

The parties engaged in settlement discussions from July through August 2014. Specifically, the parties participated in confidential mediation before an agreed-upon mediator on July 8, 2014, and discussions continued through August 2014.  During those negotiations,

---

[1] C&D does not take issue with the amount of costs and expenses claimed by Relator.

Relator demanded payment of $1,500,000.00, plus fees and costs.[2]  *See* Memorandum in Support of Relator's Motion for Award of Attorneys' Fees and Expenses, dated August 19, 2016 ("Memorandum" or "Memo.") (Dkt. No. 139), at 2.  At the time, C&D advised Relator of its financial issues and that it was operating as a going concern, and even disclosed its confidential audited financial statements to Relator's counsel.  *See* Exhibit A, Orlofsky July 29, 2014 Email. The settlement discussions ultimately proved unsuccessful.

On April 2, 2015, prior to moving for summary judgment, Relator filed a Second Amended Complaint to expand the scope of his claims to include all batteries delivered subsequent to the contract at issue as also violative of the FCA, essentially increasing the amount of alleged damages to upwards of $30,000,000 for goods that the Government accepted, used, and continues to order.  *See* Relator's Second Amended Qui Tam Complaint, April 2, 2015 ("SAC") (Dkt. No. 57); Relator's Memorandum in Support of his Motion for Summary Judgment, dated April 20, 2015 ("Relator's Summary Judgment Memo.") (Dkt. No. 60), at 42-43.  On April 20, 2015, the parties filed cross motions for summary judgement.  *See* Relator's Motion for Summary Judgment, dated April 20, 2015 (Dkt. No. 59); Defendant C&D Technologies, Inc.'s Motion for Summary Judgment, dated April 20, 2015 ("C&D's Summary Judgment Motion") (Dkt. No. 63).  The Court denied both parties' motions on July 22, 2015. *See* Memorandum, dated July 22, 2015 (Dkt. No. 94).

**Resolution of the Litigation**

According to Relator, C&D fraudulently substituted the missile batteries that the Government contracted for with defective goods when it used aluminum oxide rather than flint

---

[2] Despite the confidential nature of the mediation and of settlement negotiations in general, Relator expressly disclosed and argued the substance of the settlement negotiations in support of his fee application.  *See* Memo. at 2, 19-20.

as the abrasive material in the sandblasting step of the manufacturing process.  *See* SAC. Specifically, Relator theorized that every invoice that C&D submitted to the Government since May 2006 was a "false claim" because every missile battery sold was purportedly defective for its alleged failure to conform to Government specifications.

Ultimately, the parties agreed to settle the action for payment of $1,700,000.00 to the Government -- just $200,000.00 more than Relator's settlement demand at the outset of the litigation in the summer of 2014.  *Compare* Memo. at 2 *with* Settlement Agreement (Dkt. No. 128-4).[3]  The settlement was purely monetary in nature and at no time was any type of remediation ever requested by Relator (or the Government).  No change has been made to C&D's manufacturing process as a result of Relator's prosecution of this case.

## ARGUMENT

### I.     Legal Standard

The FCA provides, in pertinent part, that a successful relator "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs."  31 U.S.C. § 3730(d)(2).  "Fees are presumed reasonable when calculated using the 'lodestar' method, by which a court assigns a *reasonable* hourly rate and multiplies that rate by the *reasonable* number of hours expended on the litigation."  *Simring v. Rutgers*, 634 Fed. Appx. 853, 857 (3d Cir. 2015) (emphasis added).

Relator bears the burden of establishing the reasonableness of both the rate claimed and the hours expended.  *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178-80 (3d Cir. 2001). A reasonable hourly rate is the prevailing rate in the relevant community charged by lawyers of

---

[3] The Settlement Agreement is Exhibit D to the Memorandum in Support of Relator's Motion to Enforce Settlement Agreement, May 13, 2016 (Dkt. No. 128).

reasonably comparable skill, experience and reputation.  *See Simring*, 634 Fed. Appx. at 857.

"To determine a reasonable number of hours, the starting point is the number actually spent on

the litigation, but a district court may exclude hours that are not reasonably expended."  *Id.*

(internal quotation marks omitted).  Hours that are excessive, redundant, or otherwise

unnecessary are not "reasonably expended."  *See id.*

      While the district court cannot decrease a fee award based on factors not raised at all by

the opposing party, the burden, nonetheless, remains on the party requesting the fee to prove its

reasonableness, and the court has a positive and affirmative function in the fee fixing process,

not merely a passive role.  *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 713

(3d Cir. 2005) ("The District Court appears to have misapprehended its role, improperly placing

a burden of proof on [the defendant] that simply does not exist."); *Loughner*, 260 F.3d at 178

(holding the district court "had an obligation to evaluate the petition in light of the objections,

and to explain why it accepted carte blanche the plaintiff's claim for time expended . . . ."); 

*Zebroski v. Gouak*, No. 09-cv-1857, 2011 WL 3565223, at *2 (E.D. Pa. Aug. 12, 2011) (Pratter,

J.) (providing the district court must conduct "a thorough and searching analysis").

      Ultimately, a fee award is within the district court's broad discretion, so long as it

employs correct legal standards and does not make findings of fact that are clearly erroneous.

*See Loughner*, 260 F.3d at 177.  One aspect of the court's exercise of discretion in evaluating a

fee award is to give meaningful consideration to the resulting degree of success.  *See Zebroski*,

2011 WL 3565223, at *5; *Hall v. Galie*, No. 05-975, 2009 WL 722278, at *7 (E.D. Pa. Mar. 17,

2009) (Pratter, J.).  "At times, fees can and should be computed only for or as to successful

claims or successful work."  *Hall*, 2009 WL 722278, at *7; *see also D'Orazio v. Washington*

*Twp.*, 501 Fed. App'x 185, 188 (3d Cir. 2012) ("[D]istrict courts have wide discretion to determine whether, and by how much, fees should be reduced for lack of success.").

## II.   **Relator Brought About No Appreciable Benefit By Pursuing this FCA Case**

Relator pursued this action ostensibly to protect the Government's interests.  *See* Memo. at 2-3.  However, the Government's Notice of Declination was not a directive to Relator to pursue the action on its behalf, nor did it delegate the prosecution of this action to Relator.  Rather, the FCA provides a relator with the option to proceed with the suit on his or her own if the Government declines to intervene.  *See* 31 U.S.C. § 3730(b)(4)(B).  As an incentive to do so, the FCA entitles a successful relator to a share of the recovery, plus reasonable attorneys' fees and costs.  *See* 31 U.S.C. § 3730(d)(2).  Here, Relator doggedly pursued this action not at the behest of the Government or to vindicate some Government interest, but rather at the prospect of recovering a boon of attorneys' fees.

While the Government did not expressly set forth the motivation behind its nonintervention in the Notice of Declination, its conduct since the commencement of this action through the present day is objectively indicative of how the Government appraised the merits of this case.[4]  Since learning of Relator's accusations against C&D (i.e., that C&D provided the Government with nonconforming goods), the Government took no action whatsoever to remove, replace, or otherwise remediate any of the missile batteries at issue.  To the contrary, the Government:  (1) *closed* its criminal investigation; (2) *declined to intervene* in this action; (3)

---

[4] In October 2012, approximately 8 months after Relator filed this action, C&D received a subpoena from the Defense Criminal Investigative Service ("DCIS") of the Department of Defense ("DoD") inquiring specifically about the sandblasting step in the manufacturing process of C&D's missile batteries.  See Declaration of Thomas J. Finn, dated April 20, 2015 ("Finn Decl.") (Dkt. No. 66), at ¶ 2.  Various departments of the Government -- including the DCIS, the United States Air Force Office of Special Investigations, the Department of Justice, and the

*used* the missile batteries it received; (4) *continues to purchase* missile batteries from C&D; (5) *increased* its orders; and (6) *waived acceptance inspection* of the missile batteries.  *See* C&D 30(b)(6) Dep. Tr. (Dkt. No. 63-1) at 30:16-21, 31:12-18; Robinson Dep. Tr. (Dkt. No. 63-3) at 130:15-131:3; Affidavit of Drew D. Heimer (Dkt. No. 83) at ¶ 15; Waived GSI Email (Dkt. No. 63-22); February 24, 2014 Email Exchanges (Dkt. No. 63-23).[5]

Relator attempts in vain to justify the exorbitant amount of attorneys' fees he now seeks. For example, he argues that he "had no choice but to fully prosecute this action" because C&D supposedly refused to offer a reasonable settlement amount during the parties' mediation in the summer of 2014.  *See* Memo. at 2.  Yet, tellingly, Relator ultimately settled "on the eve of trial" for $1,700,000.00 -- a mere $200,000.00 more than the $1,500,000.00 he demanded years before.[6]  *Compare* Memo. at 2 *with* Settlement Agreement.  Even after having litigated what he characterizes was a "hard-fought FCA action," Relator failed to advance his position in any meaningful way.

Clearly, Relator's prosecution of this case yielded no appreciable benefit, certainly none that served to further the public policy underlying the FCA.  *See United States ex rel. Sanders v. American-Amicable Life Ins. Co. of Texas*, (Pratter, J.), *aff'd*, 545 F.3d 256 (3d Cir. 2008)

---

United States Attorney's Office -- conducted a thorough investigation of the alleged issues and ultimately took no action against C&D.  *See* Finn Decl. at ¶ 3.

[5] These were submitted as exhibits in support of C&D's Summary Judgment Motion (Dkt. No. 63).

[6] Relator's assertion that he ultimately accepted the $1,700,000.00 settlement because of C&D's inability to pay (*see* Memo. at 20) is disingenuous and ignores the fact that C&D informed Relator at the outset of the litigation of its precarious financial status.  In July 2014, as part of its good faith negotiations, C&D voluntarily disclosed to Relator its confidential Consolidated Financial Statements for the fiscal years ended January 31, 2013, 2012, and 2011, which were the most recent at the time.  *See* Exhibit A, Orlofsky July 29, 2014 Email; *see also* Memorandum in Support of Relator's Motion to Enforce Settlement Agreement, dated May 13, 2016 (Dkt. No. 128), at 6 (acknowledging C&D's subsequent disclosure of its confidential Consolidated Financial Statements for the fiscal years ended January 31, 2015 and 2014).

ME1 23305173v.1

(setting forth the FCA's purpose of providing restitution to the government of money taken from it by fraud).

**III.**    **The Billing Rates Claimed Are Unreasonable**

Relator advances the untenable position that his attorneys are entitled to an award of fees based on overly-inflated, "extrapolated" rates. *See* Memo. at 28-30. Relator claims that this Court should ignore his counsel's historic billing rates and ignore the current version of the fee schedule promulgated by Community Legal Services of Philadelphia ("CLS Rates"), which is routinely relied on by courts in this district. Instead, and despite this Court's admonition not to, Relator asks this Court to "extrapolate" hourly rates from the CLS Rates in an effort, he claims, to bring those rates current as of the date of his fee application. Relator's approach is without basis and should be rejected, and the Court should award fees based on the current CLS Rates.[7]

**A.**    **The Current CLS Rates Should Be Applied By This Court**

As an initial matter, C&D agrees that it is appropriate for this Court to consider and rely on the CLS Rates for purposes of this application. *See Maldonado v. Houstoun*, 256 F.3d 181, 187-88 (3d Cir. 2001). C&D also agrees that this Court should award attorneys' fees based on the rates in effect at the time Relator submitted his application. In this case, those rates are set forth in the CLS Rates for 2014 -- not in the "extrapolated" rates urged by Relator. The law

---

[7] The Court should reject Relator's "extrapolated" rates out of hand. The CLS Rates promulgated in 2014 remain the "current" rates. Nonetheless, it is worth understanding the magnitude of Relator's overreaching in his "extrapolated" hourly rates. For example, Mr. Begelman and Mr. Orlow list historic rates of $600/hour for their services. Unsatisfied with that rate, however, Relator -- without any explanation why -- first determines that these attorneys should recover for their services at $650/hour, the maximum rate set forth in the CLS Rates for attorneys with their length of service. Still unsatisfied, Relator then claims that because the maximum rate for attorneys with more than 25 years' experience increased by $190 from 2011 to 2014, that same increase can be "extrapolated" on a two-year basis from 2014 to 2016. Thus, Mr. Begelman and Mr. Orlow's historic hourly billing rate of $600/hour has been increased by nearly 30%, from $600 to $778 for purposes of this fee application.

relied on by Relator to claim "extrapolated" rates in this case is inapposite and Relator can point to no instance in which a court in this district has taken such an approach in regard to the current, applicable CLS Rates.

Indeed, C&D has identified 7 instances in which judges of this Court have applied the 2014 CLS Rates in decisions rendered within this year. *See Williams v. Advanced Urgent Care*, No. 14-6347, 2016 WL 4478810, at *7 (E.D. Pa. Aug. 25, 2016) (DuBois, J.); *M.W. v. Sch. Dist. of Phila.*, No. 15-5586, 2016 WL 3959073, at *4 (E.D. Pa. July 22, 2016) (Schiller, J.); *Hawthorne v. Norristown*, No. 15-01572, 2016 WL 1720501, at *5 (E.D. Pa. April 29, 2016) (Pappert, J.); *Sch. Dist. of Phila. v. Williams*, No. 14-6238, 2016 WL 877841, at *6 (E.D. Pa. March 7, 2016) (Schiller, J.); *Bodek & Rhodes, Inc. v. Bob Lanier Enters., Inc.*, No. 15-3421, 2016 WL 398079, at *8 (E.D. Pa. Feb. 2, 2016) (Dalzell, J.); *Graphic Styles/styles International LLC v. Men's Wear Creations*, No. 14-4283, 2016 WL 299083, at *6 (E.D. Pa. Jan. 25, 2016) (Beetlestone, J.) (comparing requested fee to 2014 CLS Rates); *I.W. v. Sch. Dist. of Phila.*, No. 14- 3141, 2016 WL 147148, at *8 (E.D. Pa. Jan. 13, 2016) (Sitarski, J.).  In none of these cases did any of the judges of this Court engage in an exercise of "extrapolating" 2014 CLS Rates to the submission date of the fee application as Relator now asks this Court to do.  This Court should refuse Relator's unprecedented invitation to do so in this case.

**B.**    **Relator's Claim For "Extrapolated" Rates Should Be Rejected**

Relator claims that the "extrapolated" rates on which his fee application is based "would properly adjust the historical 2014 CLS rates to reflect their present value today."  Memo. at 30. In support of this assertion, Relator relies on *Keenan v. City of Philadelphia*, 983 F.2d 459 (3d Cir. 1992), *Bolden v. Southeastern Pennsylvania Transportation Authority*, 897 F. Supp. 188 (E.D. Pa. 1995), and *Contractors Association of Eastern Pennsylvania v. City of Philadelphia*,

No. 89–2737, 1996 WL 355341 (E.D. Pa. June 20, 1996).  None of those cases stand for the proposition that this Court is free to "extrapolate" hourly rates from the current version of the CLS Rates.

Instead, all three cases stand for the proposition that a court may, in an appropriate case, compensate for the delay in payment in one of two ways:  "basing the fee award on current rates or adjusting the fee based on historical rates to reflect its present value."  *Keenan*, 983 F.2d at 476.  As an initial matter, however, the burden is on the plaintiff to document the need for a delay multiplier.  *See id.*  To meet this burden, Relator's "evidence should document the costs of receiving delayed payment of fees."  *Id.*  In this regard, the Third Circuit has upheld a district court's grant of compensation for delay based on record evidence of "(1) market interest rates and (2) certification of law firms loans and interest payments paid on those loans while the law firm awaited payment of the fee in the case."  *Keenan*, 983 F.2d at 477 (citing *Blum v. Witco Chem. Corp.*, 888 F.2d 975, 984-85 (3d Cir. 1989).

Here, Relator has presented no evidence of specific costs incurred by his attorneys while they awaited payment in this case.  In the absence of any such evidence, this Court should reject any suggestion to adjust historical rates to present value and apply current rates.  *See Bolden*, 897 F. Supp. at 193 (applying the current rate method where "there is no evidence that plaintiff's proposed adjustment reflects his actual cost of deferred payment"); *Contractors Ass'n*, 1996 WL 355341, at *8 (applying current rates for fee award).

### C.      This Court Should Apply the Current CLS Rates

As set forth above, the "current" rates applicable in this case are the current CLS rates. Application of those rates, even at the upper end as claimed by Relator, will give Relator's counsel an adequate adjustment for delay in payment when compared to counsel's historic rates

and will also preclude the exorbitant "extrapolated" fees on which Relator's application is based. Historic rates for Begelman-Orlow firm are contained in the fee application.  *See* Memo. at Exhibit B-1 (Dkt. No. 139-6).  Although Helmer-Martins elected not to include its historic rates in the fee application itself, those rates were previously submitted to this Court by way of correspondence from Paul B. Martins, Esq., dated January 28, 2016 ("Martins January 28 Letter").

A comparison of Begelman-Orlow and Helmer-Martins historic rates to the current CLS Rates and then to the "extrapolated" rates claimed in Relator's application is revealing:

| Attorney | Historic Rate[8] | Current CLS Rate | Claimed CLS Rate | Multiplier Over Historic Rate | Extrapolated Rate |
|----------|-----------|-----------|-----------|-----------|-----------|
| Begelman | $600 | $600-$650 | $650 | 1.083 | $778 |
| M. Orlow | $600 | $600-$650 | $650 | 1.083 | $778 |
| Poserina | $600 | $520-$590 | $585 | 0.975 | $650 |
| D. Orlow | $200 | $200-$250 | $250 | 1.250 | $267 |
| Helmer | $660 | $600-$650 | $650 | 0.985 | $778 |
| Martins | $565 | $600-$650 | $650 | 1.150 | $760 |
| Popham | $525 | $520-$590 | $520 | 0.990 | $650 |
| Tate | $310 | $265-$335 | $335 | 1.081 | $389 |
| Diggs | $163 | $115-$140 | $140 | 0.859 | $168 |
| Boatright | $190 | $115-$140 | $140 | 0.737 | $168 |

This chart indicates that even at the upper end of the current CLS Rates, Relator's counsel will be awarded premiums of between 8% and 15% for the four most prolific billers in his legal

---

[8] As set forth in the Martins January 28 Letter, submitted to this Court, Helmer-Martins increased its historic rates as of February 1, 2015.  C&D has used these increased rates for purposes of comparison to the current CLS Rates.

entourage:  Begelman (8.3%), Orlow (8.3%), Martins (15%), and Tate (8.1%).  Taking into

account all hours claimed by all timekeepers, use of the current CLS Rates claimed by Relator

would result in an 8.86% premium over counsel's historic rates.[9]  In these days of near-zero

interest rates, a nearly 9% premium over historic rates will more than adequately compensate

counsel for any delay in payment.

In addition to the premium counsel would enjoy by application of the current CLS Rates,

there is one other point of comparison that is worth noting.  Using the hours claimed by Relator

(including the 3% discount), the average hourly billing rate based on his counsel's historic rates

is $446.16 across all timekeepers ($2,430,455/5,447.51).  Using the current CLS Rates as

---

[9] This premium remains the same regardless of whether one uses all hours claimed by both of
Relator's law firms or only the total hours less a 3% discount, as Relator does in his
Memorandum.  Using that 3% discount, Relator claims that use of current CLS Rates would
result in a fee award of $2,645,919.70.  *See* Memo. at 27.  Using historic rates, the same hours
would result in a fee award as follows:

| Attorney | Hours | Historic Rate | Historic Total |
|----------|-------|---------------|----------------|
| Begelman | 298.26 | $600.00 | $178,956.00 |
| M. Orlow | 305.74 | $600.00 | $183,444.00 |
| Poserina | 79.83 | $600.00 | $47,898.00 |
| D. Orlow | 5.63 | $200.00 | $1,126.00 |
| Helmer | 250.02 | $660.00 | $165,013.20 |
| Martins | 2,027.25 | $565.00 | $1,145,396.25 |
| Popham | 198.61 | $525.00 | $104,270.25 |
| Tate | 1,549.77 | $310.00 | $480,428.70 |
| Diggs | 564.20 | $163.00 | $91,964.60 |
| Boatright | 168.20 | $190.00 | $31,958.00 |
| TOTAL | 5,447.51 | | $2,430,455.00 |

Dividing the $2.645 million by the $2.430 million results in a multiplier of 1.08865, which
equates to an 8.86% premium over historic rates.

claimed by Relator, that hourly rate jumps to $485.71 per timekeeper ($2,645,919.70/5,447.51),

an increase, as shown above, of 8.86%.  Finally, using the "extrapolated" rates claimed by

Relator, that hourly rate soars to an astounding $571.55 for all timekeepers

($3,113,530.50/5,447.51), an increase of about 28.1% above historic rates and 17.67% above the

current CLS Rates.  Relator has presented no evidence that would justify either of these

outrageous premiums.  Instead, a premium of 8.86% is fully adequate to compensate counsel for

any delay in compensation in this matter, especially where, as here, Relator has not submitted

one shred of evidence regarding counsel's cost to carry this case.

## IV.   __The Hours Claimed Are Unreasonable__

Relator maintains that the hours amassed by his counsel were reasonable and diligent

given the factual complexity of this case.  *See* Memo. at 8.  This contention is belied by Relator's

own prior position that this case was a "quintessential" product substitution case under the FCA

because C&D's purported failure to use flint deviated from express contract and purchase order

terms.  *See* Relator's Summary Judgment Memo. (Dkt. No. 60), at 27-30.  C&D itself has always

maintained that the issues complained of here were really a breach of contract claim that Relator

improperly shoehorned into an FCA claim.  *See* Memorandum of Law in Support of Defendant

C&D Technologies, Inc.'s Motion for Summary Judgment, dated April 20, 2015 ("C&D's

Summary Judgment Memo.") (Dkt. No. 64), at 24-30.

Relying on his unjustified "extrapolated" hourly rates, Relator claims that he is entitled to

an award of attorneys' fees in the amount of $3,113,530.50.  *See* Memo. at 32.  This number

includes an across-the-board discount of 3%, to ensure, according to Relator, "that none of the

time sought is excessive or redundant."[10]   *See* Memo. at 11, 22.   Thus, without any discount,

Relator's fee claim would amount to $3,209.825.26 ($3,113,530.50/0.97).   When calculated

under current CLS Rates and without the arbitrary 3% reduction, the amount of fees sought are

$2,727,752.20.[11]

       As an initial matter, the Court should note that, aside from increasing their billing rates

from $600 to $778/hour, Relator did nothing to take into account the number of partners he had

staffing this matter, the result being an unjustifiable partner to associate ratio of 6:1.[12]   Instead,

Relator touts that he eliminated 12 timekeepers, who, notably, had the lowest billing rates in any

event.   *See* Memo. at 11, 22; Martins January 28 Letter (identifying all timekeepers).   C&D

should not be required to pay an excessive fee simply because Relator chose to staff his case in

such an unreasonable manner.[13]   Clearly, no paying client would permit the staffing in such a

manner.

       C&D submits that the $2,727,752.20 amount of attorneys' fees under the current CLS

Rates should be reduced by $769,045.69, to $1,958,706.51, to account for inefficient and/or

---

[10] Relator made this across-the-board deduction and ignored the Court's instruction to use "sharp pencils" and to use categories of time and tasks rather than indiscriminate deductions.

[11] Evidently as a fallback position, Relator also includes in his Memorandum a calculation of his attorneys' fees using the current CLS Rates.  *See* Memo. at 27.  Using those rates, Relator claims that the Court should award fees in the amount of $2,645,919.70, which includes the 3% discount.  Without that discount, the fees claimed would total $2,727,752.20, which is the number that C&D will use for purposes of arriving at a "reasonable" number that is based on "reasonable" hours expended by Relator's attorneys.

[12] Although two associates are included in Relator's remaining timekeepers, one of the two associates accounted for only 5.8 hours of time.  Thus, a more accurate partner to associate ratio is 6:1 given that the second associate did not contribute in any material way.

[13] Further, C&D believes that Relator's counsel will also receive a percentage of the settlement based on a contingency fee arrangement with Relator, which amount is not accounted for in the present fee demand.

redundant efforts on the part of Relator's counsel, as revealed in their billing records.[14]  The

obscene amount of hours for which Relator seeks an award is objectively unreasonable.  Indeed,

the Court provided clear instruction as to what would be considered reasonable, which directives

Relator completely ignored.  C&D, in accordance with the Court's guidelines, arrived at a

reasonable fee award of $1,958,706.51.  A summary of the various categories of reductions and

the calculations supporting the reduction amounts that are warranted is attached hereto as Exhibit

B and are based on the following.

### A.      Depositions:  $182,544.44 Reduction

Based on the Court's prior express guidance, C&D submits that a reasonable fee award is

based on two attorneys attending each deposition (unless additional attorneys are shown to have

made material contributions to the deposition), along with 1.75 hours of total preparation time

for each hour of deposition time.  As such, C&D believes that the fees claimed by Relator should

be reduced as follows.

### 1.      B. Robinson and G. Haton

The Robinson and Haton depositions took place on September 23, 2014.  The Robinson

deposition lasted 3.7 hours and the Haton deposition lasted 1 hour.  Mr. Martins took both

depositions and James A. Tate, Esq. attended with him.  The billing records provided by Relator

show an unreasonable amount of $37,609.50 for 5 hours of depositions.  C&D submits that

---

[14] Relator's reliance on the biased and unsubstantiated declarations of Marc S. Raspanti, Esq. is
misplaced and should be rejected.  *See* Memo. at 22-23, at Exhibit F, Declaration of Marc S.
Raspanti, Esq. in Support of Relator's Motion for Attorneys' Fees and Expenses ("Raspanti
Decl.") (Dkt No. 139-15).  Mr. Raspanti was not involved in this litigation and has no first hand
knowledge of any of the matters on which he purports to "opine."  A review of his Declaration
reveals that he does nothing more than take the self-serving arguments proffered in Relator's
Memorandum and regurgitate them in the form of a declaration.  *See* Raspanti Decl. at ¶ 23-33.
Furthermore, clearly of the Relator FCA bar, Mr. Raspanti has longstanding collegial

preparation time under the Court's guidelines of 8.22 hours (4.7 x 1.75) is reasonable, and thus, the total fees awarded for both depositions should be $9,972.50. Accordingly, the fees Relator seeks for the Robinson and Haton depositions should be reduced by $27,637.00. *See* Exhibit C.

### 2.      Rule 30(b)(6)

The Rule 30(b)(6) deposition took place on October 17, 2014, and was taken by Mr. Martins. Mr. Tate, Ross Begelman, Esq., and Marc M. Orlow, Esq. also attended, although Mr. Begelman and Mr. Orlow appeared to C&D to have added nothing substantive to the proceedings. Significantly, Relator offers no basis as to why Mr. Begelman's and Mr. Orlow's presence was necessary. Taking into account a 38 minute recess, the deposition lasted 7 hours. As set forth in Exhibit D, total fees for this deposition should be no more than $14,857.50. Instead, Relator claimed an unreasonable amount of $64,412.50 in fees, thus warranting a reduction of $49,555.00. *See* Exhibit D.

### 3.      D. Silence and K. Toll

The Silence and Toll depositions took place on October 23, 2014. The Silence deposition lasted 2.7 hours and was taken by Mr. Martins, with Mr. Tate attending. The Toll deposition lasted 3.5 hours and was taken by Mr. Tate, with Mr. Martins attending. The fee award for these depositions should be no more than $11,230.13. Relator has claimed $26,927.00 in fees and that amount should, therefore, be reduced by $15,696.88. *See* Exhibit E.

### 4.      M. Shillinger, D. Heimer, R. Capps, and H. Smith

These depositions of Shillinger, Heimer, Capps, and Smith took place on December 3, 4, 10 and 11, 2014, respectively. C&D has addressed them together because the billing records provided to the Court often describe work on one or more of the four or contain entries that are

---

relationships with Relator's counsel. *See* Raspanti Decl. at ¶ 21. Accordingly, Mr. Raspanti's

ME1 23305173v.1

not directed to a specifically named deposition.  The Shillinger and Capps depositions were taken by Mr. Martins, with Mr. Tate attending.  The Heimer and Smith depositions were taken by Mr. Tate, with Mr. Martins attending.  Mr. Begelman attended the Shillinger and Heimer depositions, for no purpose that is apparent to C&D, and Relator has provided no explanation or basis as to why he was present.  Based on the Court's guidance, reasonable fees for these four depositions should be $48,428.06.  Relator has claimed $120,886.50 in fees and that amount should, therefore, be reduced by $72,458.44.  *See* Exhibit F.

### 5.   J. Groeger

The Groeger deposition took place on March 11, 2015, and lasted 7.2 hours.  Mr. Tate took the deposition, with Mr. Martins attending.  Fees for this deposition should have been no more than $11,313.00.  Instead, Relator seeks fees in the amount of $23,677.00, justifying a reduction of $12,364.00.  *See* Exhibit G.

### 6.   D. Bahr

The Bahr deposition took place on March 12, 2015, and lasted 5.5 hours.  Fees for this deposition should have been no more than $8,641.88.  Instead, Relator seeks fees in the amount of $12,518.50, justifying a reduction of $3,876.63.  *See* Exhibit H.

### 7.   G. Poleskey

The Poleskey deposition took place on May 5, 2015, and lasted 6.2 hours.  Fees for this deposition should have been no more than $11,082.50.  Instead, Relator seeks fees in the amount of $12,039.00, justifying a reduction of $956.50.  *See* Exhibit I.

"opinion" is wholly unfounded, unduly biased, and should be rejected in its entirety.

### B.      Document Review:  $68,669.45 Reduction

Relator seeks payment for nearly 275 hours and over $100,000 in fees for the review of

documents produced primarily by C&D.  In a tenuous attempt to portray this barrage of hours as

reasonable, Relator speciously argues that his counsel was made to "wade through" and decipher

one million pages of electronically stored information and documents dating back 50 years that

were produced by C&D without regard to relevance.  *See* Memo. at 11-12.  In so arguing,

Relator fails to acknowledge, however, that he requested these documents and failed to narrowly

tailor his requests.[15]  The fees claimed for this document review were incurred by 7 separate

timekeepers.  To the extent Relator's counsel "sifted" through the production page by page,

C&D should not be made to pay for such unwarranted inefficiency.  Indeed, C&D produced the

majority of documents in electronic text searchable format.  C&D submits that Relator's

document review should have been much more focused and could have been accomplished with

fewer timekeepers and within 100 hours.  As such, C&D the requested fees should be reduced by

$68,669.45.  *See* Exhibit J.

### C.      Summary Judgment Proceedings:  $312,924.38 Reduction

Relator seeks payment for over 900 hours and more than $440,000 in fees for his

attorneys to:  (1) brief his motion for summary judgment; (2) oppose C&D's motion for

---

[15] Similarly, Relator's position that he engaged in extensive discovery, including filing and arguing discovery motions, is likewise without merit.  In June 2014, in anticipation of the mediation, the parties agreed to put a hold on discovery in order to avoid incurring significant discovery expenses, which agreement was confirmed via email on June 24, 2014.  See Orlow June 24, 2014 Email (Dkt. No. 41-2) (Exhibit A to Defendant C&D Technologies, Inc.'s Opposition to Plaintiff's Motion to Compel, dated September 5, 2014 (Dkt. No. 41)).  Thus, C&D stood down from further discovery action pending the outcome of the mediation.  The parties attended a mediation session on July 8, 2014, and discussions continued through August 5, 2014.  Relator filed a premature Motion to Compel a mere 10 days later, knowing that the parties had an agreement to stand down from discovery -- but failed to reveal that to the Court in his motion.  See Relator's Motion to Compel, August 15, 2014 (Dkt. No. 38).

summary judgment; (3) argue the motions; and (4) respond to C&D's motion for reconsideration. Viewed in practical terms, those numbers equate to an attorney working full-time for 6 months straight on nothing but summary judgment issues in this matter and billing at a rate of nearly $500 per hour. This is exceedingly unreasonable for attorneys who simultaneously claim that they should be awarded their high hourly rates given their expertise in FCA cases. Relator purports to justify this outrageous number of hours by touting that he defeated C&D's Summary Judgment Motion. *See* Memo. at 16. Yet, Relator's own Motion for Summary Judgment was likewise defeated.[16] *See* Memorandum, dated July 22, 2015 (Dkt. No. 94). Ultimately, C&D believes that the total hours devoted to summary judgment issues should be no more than 285 and that fees should be $129,286.14, as set forth below.

### 1.      Relator's Motion for Summary Judgment

Relator filed his motion for summary judgment on April 20, 2015. The first billing entries related to summary judgment appear in the relevant records beginning in November, 2014. All told, Relator seeks payment for 284.15 hours and $156,146.00 in fees for drafting and filing his motion for summary judgment. C&D believes that this project should have taken no more than 100 hours and allocating those 100 hours pro rata across the timekeepers who worked on the motion results in total fees of $54,948.31, or a reduction of $101,197.70 from the fees claimed by Relator. *See* Exhibit K.

### 2.      Opposition to C&D's Motion for Summary Judgment

Relator seeks payment for 291.20 hours and $129,626.50 in fees for filing his opposition to C&D's motion for summary judgment on May 15, 2015. C&D believes that 100 hours and

---

[16] Indeed, in his Memorandum, Relator enumerated a number of issues that illustrate the weaknesses and meritless nature of his case. *See* Memo. at 17-18.

$32,933.05 should have been devoted to this task, resulting in a deduction of $96,693.45.  *See* Exhibit L.

### 3.       Relator's Reply Brief on his Motion for Summary Judgment

Relator filed his reply on May 27, 2015, and now seeks payment for 127.00 hours and $58,464.50 in fees.  C&D believes that 50 hours would have been reasonable for this project, resulting in fees of $23,016.85 and a total deduction of $35,447.65.  *See* Exhibit M.

### 4.       Summary Judgment Argument

Based on express guidance from the Court, the 2.5 hour argument on the cross-motions for summary judgment should have resulted in a total of 9.38 hours of attorney time and $5,306.25 in fees.  Instead, Relator seeks 121.20 hours and $57,231.50 in fees to prepare and argue summary judgment issues and review the Court's decision when released.  C&D believes that a further reduction of $51,925.25 is in order.  *See* Exhibit N.

### 5.       Opposition to C&D's Motion for Reconsideration

C&D filed a five-page motion for reconsideration on August 5, 2015.  Relator now seeks 77.85 hours and $40,742.00 in fees for his August 18, 2015 opposition to that motion.  C&D believes that 25 hours and $13,081.68 in fees is appropriate, resulting in an additional deduction of $27,660.33.  *See* Exhibit O.

### D.       <u>Daubert Motions:  $58,106.56 Reduction</u>

Relator seeks more than 200 hours and more than $87,000 in fees for briefing and opposing Daubert motions.  C&D believes that no more than 60 hours should have been devoted to this phase of the case, resulting in a further reduction of the fees sought as follows.

### 1.   Relator's Daubert Motion

Relator filed a single "Daubert" motion on April 20, 2105.  He now claims 100 hours and $42,194.00 in fees for the preparation and filing of that motion.  C&D believes that the task should have taken no more than 30 hours, resulting in a deduction of $29,535.80 from Relator's fee request.  *See* Exhibit P.

### 2.   Opposition to C&D's Daubert Motions

Relator filed oppositions to C&D's two Daubert motions on May 15, 2015.  He now claims fees in the amount of 103.00 hours and $44,956.50.  Once again, C&D believes that 30 hours would have been ample time to prepare and file those oppositions.  This would result in an additional deduction of $31,864.43.  *See* Exhibit Q.

### E.   Motions in Limine:  $34,303.31 Reduction

Relator filed three motions in limine on November 25, 2015.  He claims that his attorneys spent 98.80 hours preparing those motions and that he is entitled to fees in the amount of $49,259.00.  C&D believes that 30 hours would have been reasonable and that those fees should be reduced by $34,303.31.  *See* Exhibit R.

### F.   Duplicate, Indecipherable and Unwarranted Charges by the Begelman Firm:  $44,440.50 Reduction

There are a number of charges contained in the Begelman firm's records that C&D does not believe it should be required to pay.  For example, C&D has identified a number of billing entries that represent either duplicate entries for the same work or vague and indecipherable entries from which it cannot be determined what work was actually done.  These entries are set forth verbatim in Exhibit S.  C&D believes that a further reduction of $44,440.50 should be included based on overstaffing, duplication, and poor billing entries by timekeepers at the Begelman firm.  *See* Exhibit S.

### G.   Travel Time for Attorneys Martins and Tate:  $61,615.25 Reduction

Relator seeks payment at full-rate for 247.70 hours and $129,526.75 in travel time logged by Mr. Martins and Mr. Tate from the Helmer firm.  C&D does not believe that it should be required to pay nearly $1,000 per hour for Relator's attorneys to travel, and submits that the travel time should be reduced by one-half.  Travel time is generally recoverable when it is the custom of the attorneys in the local community to bill clients for their travel time.  *See Planned Parenthood of Central N.J. v. Attorney General of State of N.J.*, 297 F.3d 253, 267-68 (3d Cir. 2002); *see also Poff v. Prime Care Med., Inc.*, No. 1:13-cv-03066, 2016 WL 3254108, at *11 (M.D. Pa. June 14, 2016) (noting split in district courts and thus reducing attorney travel time by 50% because plaintiff failed to establish the custom in the area regarding attorneys billing for travel); *Lowe v. Clearfield-Jefferson Drop-In Ctrs. Inc.*, No. 3:2009-91, 2009 WL 2762406, at *1 n.1 (W.D. Pa. Aug. 27, 2009) (noting that, had it been objected to, plaintiff's counsel's hours billed for travel would have been reduced by half ); *Charles Q. v. Houstoun*, No. 95-280, 1997 WL 827546, at *5 (M.D. Pa. Sept. 30, 1997) (reducing the fee award for travel by one-half); *but see Gonzalez v. Bustleton Servs., Inc.*, No. 08-4703, 2010 WL 3282623, at *3 (E.D. Pa. Aug. 18, 2010) (awarding full rate for travel time spent preparing for trial).  Reduction of Mr. Martins and Mr. Tate's travel time by one-half is particularly reasonable given that the Third Circuit has noted "a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel."  *Interfaith Cmty. Org.*, 426 F.3d at 710.  Accordingly, reducing the travel time by one-half warrants a further reduction of $64,763.38.[17]  *See* Exhibit T.

---

[17] In several instances, C&D was unable to isolate travel time due to the proclivity of Mr. Martins and Mr. Tate to block bill many of their time entries.  Where C&D was able to isolate

**V.      The Attorneys' Fees Requested Should Be Reduced By 20% Because Relator Accomplished Nothing in this Lawsuit**

Courts routinely reduce fee awards where, as here, the result obtained is significantly less than what was originally claimed.  As noted by the Third Circuit, district courts have wide discretion to determine if and by how much a requested fee award should be reduced for lack of success.  *See D'Orazio*, 501 Fed. App'x at 188 (3d Cir. 2012) (affirming district court's 20% reduction in attorneys' fees to reflect the limited success of the litigation); *Zebroski*, 2011 WL 3565223, at *2 ("When a plaintiff has achieved only partial success, the court may adjust the fee downward, 'even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith.'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

In this case, with the exception of a relatively small monetary payment, Relator obtained absolutely nothing for the Government and this litigation failed to redress the Government's rights in any substantive way.  As discussed, the settlement has not resulted in any change whatsoever in the manner in which C&D manufactures the missile batteries at issue and the Government continues to purchase those batteries in increased quantities.  *See supra* Part II. Where, as here, the ultimate resolution of the action can hardly be characterized as a "resounding success," it is appropriate to take that into account in determining a reasonable fee award.  *See Hall*, 2009 WL 722278, at *7.  Indeed, if the fees were to be awarded strictly on the basis of the ratio between what Relator claimed in damages (i.e., upwards of $30,000,000) and what was ultimately obtained (i.e., $1,700,000 settlement), the most Relator could recover would be 5.67% of what he now claims.[18]  Courts recognize, however, that the application of a formulaic approach might discourage attorneys from taking on cases of this nature.  Recognizing this, C&D

---

travel time from other tasks, that has been done.  Where C&D could not isolate travel time, a one-half reduction has been taken on all block-billed time for a particular time entry.

believes that the fees requested by Relator should be reduced by 20%, or by $391,741.30, to $1,566,965.21 after the reductions set forth above.

## CONCLUSION

Relator saw a lucrative opportunity to pursue a case involving the nation's missile defense system wherein he had the potential to receive a sizeable portion of what he undoubtedly anticipated would result in a multi-million award.  Indeed, Relator stood to be awarded as much as 30% of the treble damages and penalties imposed under the FCA, as well as recoup any attorneys' fees and expenses that would be incurred.  Thus, in pursuit of his payday, he pressed this litigation without regard to its actual merit or any concern for obtaining redress of any Government right.

Now that the case was resolved for a fraction of the $30,000,000 he sought to recover, Relator's efforts to maximize his award of attorneys' fees are transparent.  Relator ignored the Court's prior guidance and instruction as to what fees would be reasonable and actually *increased* his fee demand by utilizing an unprecedented "extrapolation" method to inflate the rates claimed in a way that has no basis or authority.  Also, the number of hours for which Relator seeks payment is excessive, redundant, and unreasonable.  Indeed, Relator's fee demand is more than two times the amount recovered for the Government on the FCA claim, far in excess of C&D's legal fees, and is unreasonable by every measure.

Accordingly, C&D respectfully requests that the Court not reward Relator's opportunistic strategy, and award Relator attorneys' fees of $1,566,965.21 and costs and expenses of $164,585.49, for a total award of no more than $1,731,550.70.

---

[18] $1,700,000/$30,000,000 = 0.0567.

ME1 23305173v.1

Dated:  September 16, 2016                    RESPECTFULLY SUBMITTED,

                                              THE DEFENDANT,
                                              C&D TECHNOLOGIES, INC.


                                     By:_____/s/   Thomas J. Finn_____
                                          Thomas J. Finn
                                          Paula Cruz Cedillo
                                          Attorney ID Nos. (Pro Hac Vice)
                                          CityPlace I, 36th Floor
                                          185 Asylum Street
                                          Hartford, Connecticut 06103
                                          Tel.: 860.275.6700
                                          Fax: 860.724.3397
                                          tfinn@mccarter.com
                                          pcedillo@mccarter.com

                                               - and -

                                          Michael J. Glasheen
                                          Katelyn M. Gillece
                                          Attorney ID Nos. 17153, 207061
                                          BNY Mellon Center
                                          1735 Market Street, Suite 700
                                          Philadelphia, PA 19103-7501
                                          Tel.: 215.979.3800
                                          Fax: 215.979.3899
                                          mglasheen@mccarter.com
                                          kgillece@mccarter.com

ME1 23305173v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of September 2016, a true and correct copy of the foregoing Opposition to Relator's Motion for Award of Attorneys' Fees and Expenses was filed electronically and served via CM/ECF upon the following:

Marc M. Orlow, Esq.
Ross Begelman, Esq.
Begelman, Orlow & Melletz
411 Route 70 East, Suite 245
Cherry Hill, New Jersey  08034

Paul B. Martins, Esq.
James A. Tate, Esq.
Helmer, Martins, Rice & Popham Co., L.P.A.
600 Vine St., Suite 2704
Cincinnati, Ohio  45202

*Attorneys for Relator Donald F. Palmer*


　　　　　　　　　/s/  Thomas J. Finn
　　　　　　　　　Thomas J. Finn