---

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **THE UNITED STATES OF AMERICA,** | § | |
| **ex rel. Donald Palmer,** | § | **Docket No. 12:907 (GEP)** |
| | § | |
| **Plaintiffs and Relator,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **C&D Technologies, Inc.** | § | |
| | § | |
| **Defendant.** | § | |

**REPLY MEMORANDUM IN SUPPORT OF RELATOR'S
MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**

Pursuant to the mandatory fee shifting provision of the False Claims Act, Relator submitted a fee petition supported by hundreds of pages of time records, applicable Third Circuit law, and three detailed affidavits explaining how the time was recorded, what it applied to, and how professional billing judgment was rigorously employed.

In response C&D now asks this Court to reduce the time sought in Relator's fee petition by 42.6%, and Relator's counsel's lodestar by even more. But C&D presents no evidence, no affidavit, and no applicable legal authority which supports its request. Instead, C&D misconstrues its obligations for rebutting Relator's evidence, presents arguments without evidence which are contradicted by the facts before the Court, and believes that the twenty-fold increase obtained by Relator over C&D's "bottom line" evaluation of this case somehow is a lack of success justifying the punishing reduction it seeks.

## I.      Relator's Attorney Time

C&D does not contest the expenses sought. Nor does C&D contest that as the prevailing party relator is entitled to "reasonable attorney fees" which compensate for the time ordinarily necessary for a case of this type. Doc. 143, C&D Opp. at 4.

### A.      C&D Misunderstands and Fails to Meet its Burden

Remarkably, C&D does not submit any evidence in support of its arguments, does not challenge any specific time entries as unreasonable for the great majority of the time it seeks to cut, and does not even identify specific objections to various categories other than that C&D "believes" less time should have been spent. *See generally* Doc. 143, C&D Opp. at 15-22. A district court cannot reduce attorneys' fees *sua sponte*.[1]

Relator has met his burden of proof of showing that his attorneys' fee request is reasonable.[2] It is now C&D's "'burden to challenge, by affidavit or brief with sufficient specificity to give fee applicant[ ]s notice, the reasonableness of the requested fee.'"[3] Though affidavits are not absolutely required:

> to the extent the challenger seeks to raise a factual issue—for example, a claim that the fee applicant's billing rate was lower than claimed—he or she must introduce affidavits averring the facts upon which the challenge is based. Affidavits are required in such instances because statements made in briefs are not evidence of the facts asserted. As *Cunningham I* makes clear, the district court, in counsel fee litigation, can never serve as an "expert witness" and may only serve as fact witness when the facts at issue are wholly

---

[1] *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 719 (3d Cir. 1989).

[2] *See generally* Doc. 139, Relator's Fee Petition; Doc. 139-1, Helmer Declaration; Doc. 139-2, Helmer-Martins Fee Detail; Doc. 139-5, Begelman Declaration; Doc. 139-6, Begelman-Orlow Fee Detail; Doc. 139-15, Raspanti Declaration.

[3] *Rougvie v. Ascena Retail Grp., Inc.*, No. CV 15-724, 2016 WL 4784121, at *3 (E.D. Pa. Sept. 12, 2016) (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Bell*, 884 F.2d 713)).

within its personal knowledge. Thus, with respect to factual issues, the court must be presented with evidence and must make findings based on the evidence.[4]

And even without an affidavit:

> we emphasize that the adverse party's submissions cannot merely allege in general terms that the time spent was excessive. In order to be sufficient, the briefs or answers challenging the fee request must be clear in two respects. First, they must generally identify the type of work being challenged, and second, they must specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable.[5]

C&D ignores these Third Circuit standards. Thus, C&D's challenge to Relator's attorney time lacks any basis for contending that the time spent is unreasonable.

### B. C&D's Proposed Reductions Based Only on Belief Are Legally Insufficient to Challenge the Reasonableness of Relator's Counsel's Requested Hours

C&D's opposition to Relator's fee petition introduces no evidence, and thus fails as a matter of law to raise any factual issues with the number of hours Relator seeks as a reasonable attorneys' fee. C&D's opposition also fails as a matter of law to challenge the reasonableness of the time sought because it does not state the specific grounds for contending that any hours claimed are unreasonable.

### 1. Depositions and Oral Argument

C&D first opposes the hours claimed for depositions. Doc. 143, C&D Opp. at 15-17. The only grounds C&D offers for its contention that these hours are unreasonable is "the Court's prior express guidance" given in futile settlement discussions. *Id.* at 15. C&D articulates the same insufficient basis for reducing Relator's Summary Judgment Argument time. *Id.* at 20.

---

[4] *Bell*, 884 F.2d at 720 (citing *Cunningham v. City of McKeesport*, 753 F.2d 262 (3d Cir. 1985); *accord Rougvie*, 2016 WL 4784121, at *3 (citing *Rode*, 892 F.2d at 1183).

[5] *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989).

C&D's reliance on a formulaic recitation of guidelines, does not, as a matter of law, "specifically state [its] grounds for contending that the hours claimed [for deposition and oral argument time] are unreasonable."[6]

Accordingly, C&D's claimed $182,544.44 reduction for deposition time and $51,925.25 for summary judgment argument time, Doc. 143, C&D Opp. Sections IV.A & C.4, are legally insufficient and must be rejected. These legally insufficient reductions total: $234,469.69.

### 2. Review of 1,000,000 Pages of Documents

C&D also argues that Relator's counsel should have only spent 100 hours reviewing 1,000,000 pages of documents. Doc. 143, C&D Opp. Section IV.B. But C&D does not offer any evidence to support its contention that these documents, many of which were not electronically searchable, could be reviewed at the 10,000 page-per-hour rate it suggests. *Id.*[7] In fact, after producing 36,000 documents, C&D itself complained to this Court two years ago about the "great cost" it would incur reviewing an additional small 9,000-document segment of the overall production for "privilege or technical issues." C&D represented that such a limited review would require an "average review rate of 100 documents per hour." Doc. 41, C&D Opp. to MTC at 2-3. If it takes 90 hours for C&D just to see if a small subset of the total document production is

---

[6] *Bell*, 884 F.2d at 720. Moreover, "in awarding attorneys' fees, [district courts] may not reduce an award by a particular percentage or amount (albeit for justifiable reasons) in an arbitrary or indiscriminate fashion." *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 52 (3d Cir. 1978) (citing *In the Matter of Meade Land and Development Co., Inc.*, 577 F.2d 858 (3d Cir. 1978)); *see also Simring v. Rutgers*, 634 F. App'x 853, 856, 861 (3d Cir. 2015) (rejecting an across the board reduction in time without detailed reasoning).

[7] C&D complains that Relator "failed to narrowly tailor his requests," Doc. 143, C&D Opp. at 18, but forgets that "To expedite the production, the parties agreed that all the documents responsive to the search terms would be produced without a relevancy review first being conducted." Doc. 41, C&D Opp. to MTC at 2 n.5.

privileged, surely reviewing, understanding, and culling documents from the entire production to assemble relevant exhibits takes much longer.[8]

Accordingly, C&D's claimed $68,699.45 reduction for document review, Doc. 143, C&D Opp. Section IV.B, is legally insufficient, unsupported by the record, and must be rejected.

### 3.    C&D's Other Unsupported Hour Reductions

C&D's other arguments that it "believes" Relator's attorney hours should be reduced are similarly devoid of any evidence or explanation of the grounds for claiming these hours are unreasonable. The Court and the Relator are left to speculate as to how the maximum hours urged by C&D have any relation to the real world of work actually done on this case. Further, C&D's "beliefs" do not put Relator on notice sufficient to contest the claimed reductions. Accordingly, as a matter of law, C&D's challenge to the reasonableness of the following hours must be rejected—See Doc. 143, C&D Opp., proposing reductions of:

| | |
|---|---|
| $101,197.70 | IV.C.1, Relator's Motion for Summary Judgment; |
| $96,693.45 | IV.C.2, Opposition to C&D's Motion for Summary Judgment; |
| $35,447.65 | IV.C.3, Relator's Reply Brief on his Motion for Summary Judgment; |
| $27,660.33 | IV.C.5, Opposition to C&D's Motion for Reconsideration; |
| $29,535.80 | IV.D.1, Relator's Daubert Motion; |
| $31,864.43 | IV.D.2, Opposition to C&D's Daubert Motions; |
| $34,303.31 | IV.E, Motions in Limine |

These legally insufficient reductions total: $356,702.67.[9]

In total, C&D's challenge to the foregoing $659,871.81 of Relator's attorney fees is

---

[8]  *See, e.g.*, Exhibits to Relator's Summary Judgment Briefing at Docs. 60, 79, 89.

[9] The dollar amounts C&D assigns to these reductions are based on assigning a percentage of total time recorded to each biller, then applying this distribution to C&D's arbitrary, unsupported "maximum" hours for each category to arrive at a monetary reduction with a blended rate unique to each category. *See* Doc. 143, C&D Opp. Exhs. J-M, O-R. We are unaware of any Court which has applied such a formula to reduce hours documented with the precision presented in Relator's fee petition.

insufficient as a matter of law, unsupported by the record, and must be rejected. Further, these amounts are calculated at 2014 CLS rates rather than at the required present value, current rates.

### C.      Travel Time

"[A] court must look to the practice in the local community" to determine whether travel time should be compensated at the full rate.[10] C&D agrees with this standard, but notably does not even <u>argue</u> that the practice <u>in Philadelphia</u> is to award travel time at a reduced hourly rate. Doc. 143, C&D Opp. at 22. Instead, C&D cites cases showing <u>other districts</u> awarding reduced hourly rates for travel time, juxtaposed against one case from this district awarding a full rate. *Id.* In fact, C&D's first case finding a "split in district courts" over how to compensate for travel time is a split between a Middle District of Pennsylvania case awarding a reduced rate and three Eastern District of Pennsylvania cases awarding a full rate for travel.[11] Plainly the practice in the Philadelphia community is to fully compensate for travel time. C&D provides no support for its contrary argument that Relator's counsel's travel time should be compensated at a reduced rate.[12]

Accordingly, C&D's claimed $64,763.38 reduction for travel time, Doc. 143, C&D Opp. Section IV.G, should be rejected.

---

[10] *Planned Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey*, 297 F.3d 253, 267 (3d Cir. 2002).

[11] Doc. 143, C&D Opp. at 22 (citing *Poff v. Prime Care Med., Inc.*, No. 1:13-CV-03066, 2016 WL 3254108, at *11 (M.D. Pa. June 14, 2016), *appealed*, No. 16-3109 (3d. Cir. Jul. 15, 2016).

[12] Moreover, many of Relator's counsel's travel entries show that his attorneys were working while traveling, *e.g.*, Doc. 139-2, Fee Detail at 62 (10/16/2014 JT: "Travel to 30(b)(6) deposition in Philly and conference with P. Martins; Review contract extension and Hill AFB meeting notes (4.70)"). Such time is compensable at the full rate even if the custom in the forum is to award "pure" travel at a reduced rate. Additionally, much of the travel in this case was to locations outside the forum like Hartford, Connecticut to take depositions at defense counsels' office. *E.g.*, Doc. 139-2, Fee Detail at 106 (3/10/2015 JT: "Travel to Hartford, review Bahr report, discovery costs sharing motion, Groeger."). Even for travel to Philadelphia, C&D's out-of-town lead counsel were surely compensated for their travel time, as is the custom in this forum.

### D.    Partner Versus Associate Ratio

C&D is represented by a large law firm whose business model is to leverage hundreds of associates' services for it clients. C&D grouses that Relator improperly staffed this case because the number of partners working on the case produced a partner to associate ratio of 6:1. Doc. 143, C&D Opp., at 14 (failing to count two associates, or to account for the relative hours worked, which results in a 2:1 ratio). This big law firm argument has been rejected before, including by this district just last week.[13] As discussed in Relator's Fee Petition, the fact that senior partners in both small firms devoted substantial time to the actual prosecution of this case on behalf of the United States is not an impediment to the reasonableness of the resulting fees.[14] C&D presents no contrary authority for the Eastern District of Pennsylvania.

Moreover, C&D offers no evidence to support its complaint that Relator's counsel spent too much time in prosecuting this case. C&D points to no specific time that was not properly spent. Rather, it simply maintains that the total amount of time was "unreasonable." C&D presents no evidence, by expert testimony or otherwise, that establishes that any time devoted to this action by Relator's counsel was unnecessary or unreasonable or otherwise "padded."

In contrast, Relator' counsel provided complete documentary evidence of the

---

[13] *Rougvie v. Ascena Retail Grp., Inc.*, No. CV 15-724, 2016 WL 4784121, at *2-3, 11 (E.D. Pa. Sept. 12, 2016) (rejecting reductions for law firm partners performing "associate level work" in part because "'[t]he cost effectiveness of various law firm models is an open question' and . . . '[m]odeling law firm economics drifts far afield of the *Hensley* calculus.'") (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114–15 (9th Cir. 2008)).

[14] Doc. 139, Fee Petition, at 10, n.18. (Numerous courts have recognized that small firms are not structured like large defense firms, and "[t]hey should not suffer consequences in a fee award because a significant amount of the work fell on [partners'] shoulders due to the size of their firms." *In re Delta/Air Tran Baggage Fee Antitrust Litig.*, No. 1:09-md-2089-TCB, 2015 WL 4635729, at *24 (N.D. Ga. Aug. 3, 2015) (collecting cases).

contemporaneous time records of counsel and substantial billing judgment reductions; objective documentation of Relator's efforts in successfully prosecuting this case; and, expert testimony establishing the reasonableness of the time expended in this case.[15]

Finally, C&D ignores the fact that Relator's counsel addressed any claim of duplication or unnecessary time spent on this action by: (1) exercising billing judgment in cutting time or not charging for time spent on particular matters;[16] (2) removing all time for twelve timekeepers;[17] and then, (3) in a further exercise of billing judgment, reducing the remaining time by 3%.[18]

### E.    Begelman-Orlow Time

C&D also "believes" that the time entries of Begelman-Orlow should be reduced by $44,440.50 based upon C&D's argument that some of the entries are "duplicate, indecipherable and unwarranted." Doc. 143, C&D Opp., at 21. C&D is incorrect.

Begelman-Orlow was Relator's sole counsel from January 9, 2012 through November 2013. Doc. 139, Fee Petition, at 4-5; Exhibit B, Begelman Decl., ¶15. Thereafter, Helmer-Martins assumed primary responsibility for the litigation of this action. But Begelman-Orlow continued to participate in the litigation as co-counsel; acting as local counsel; and, maintaining

---

[15] Doc. 139-1, Helmer Decl.; Doc. 139-2, Helmer-Martins time records; Doc. 139-5, Begelman Decl.; Doc. 139-6, Begelman-Orlow time records; Doc. 139-10, Chart of Exhibits Used in Depositions; Docs. 139-11, 12, 13, 14, Touhy Requests by Relator's Counsel to DCMA and DLA; Doc. 139-15, Raspanti Decl., at ¶33 (opining that the amount of time devoted to the prosecution of this action was reasonable).

[16] Doc. 139, Fee Petition, at 11, 22, 30, 31; Doc. 139-1, Helmer Decl., at ¶¶7, 44, 53; Doc. 139-5, Begelman Decl., at ¶¶12, 20, 25, 30.

[17] Doc. 139, Fee Petition, at 11, 22 n.26; Doc. 139-1, Helmer Decl., at ¶¶10, 56; Doc. 139-5, Begelman Decl., at ¶12, 26.

[18] Doc. 139, Fee Petition, at 11, 22, 26-27, 30-32; Doc. 139-1, Helmer Decl., at ¶¶10, 55; Doc. 139-5, Begelman Decl., at ¶¶12, 13, 27.

primary responsibility for client interactions, defending the client at his deposition, and participating in all hearings and court conferences.[19]

While C&D may not "believe" that the work reflected in Begelman-Orlow's time records was actually performed, Begelman-Orlow has provided evidence in the form of a Declaration which certifies as officers of this Court that the work was in fact actually done.[20] In reviewing C&D's list of disputed charges (Doc. 143, Exhibit S), it appears that all of the charges except three ("Communication with other external") are described in sufficient detail.[21] What may appear to C&D as duplicate charges on certain dates are, in fact, separate entries for multiple tasks performed on the same day.[22]

The Record refutes C&D's argument.

## III.    Current Rates

C&D does not contest awarding 2014 CLS rates. Doc. 143, C&D Opp., at 8. Thus, if Relator's time devoted to prosecuting this action on behalf of the United States is reasonable,

---

[19]  Doc. 139, Fee Petition, at 4-5; Doc. 139-5, Begelman Decl., ¶18.

[20] Doc. 139-5, Begelman Decl., ¶¶11, 19-21, 24-30.

[21] The "Communication with other external" entries that may be viewed as vague by C&D total 0.9 hours. These entries reflect conversations with personnel "external" to the office, for example, conversations with the Assistant United States Attorney assigned to this case concerning whether the Government would decline intervention and whether Relator would prosecute this action on behalf of the United States, or conversations with the client regarding the status of the case. Those three charges total 565 dollars.

[22] As previously certified, Begelman-Orlow utilizes a case management billing system that allows for contemporaneous entries of time. When possible, each time a member of the firm performs a task whether it be a "Review of the File" or a "Communication with the client", an entry is made in the billing system. *See* Doc. 139-5, Begelman Decl., ¶¶11, 20-22. It is not the firms' practice to wait until the end of the day and total up all charges, but rather when possible entries are made as work is performed. *See id*. at ¶20.

Relator would be entitled to an award of $2,810,505.19 (Doc. 139, Fee Petition, at 27) <u>if this application were made two years ago</u>.

But this is not 2014. This application was made in August of 2016 and, in accord with the law of this Circuit, Relator is entitled to recover his fees at their present value / current rates. *Id.* at 28-30. As discussed in detail in Relator's Fee Petition, the law of this Circuit supports extrapolating these 2014 rates to ascertain their present value.[23] Current Philadelphia rates for experienced litigators are higher than the 2014 CLS rates, as evidenced by Marc Raspanti, a False Claims Act attorney with 28-years experience, being awarded a "reasonable" hourly rate of $725—higher than the 2014 CLS maximum—as class counsel in this District this month.[24]

Accordingly, the 2014 CLS rates—which C&D stipulates should be used—must be increased to present value to reflect current 2016 rates. Relator has arrived at this present value by extrapolating the same rate of annual increase between the published CLS rates for 2011 and

_____

[23] Doc. 139, Fee Petition, at 28-29. *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) ("Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed"; and therefore courts should make "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise . . . ."). *See also Simring v. Rutgers*, 634 F. App'x 853, 859 (3d Cir. 2015) ("We have held, however, that '[w]hen attorney's fees are awarded, the current market rate must be used,' and that 'the current market rate is the rate at the time of the fee petition.' *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001)"); *see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc.* (*Interfaith II*), 726 F.3d 403, 415 (3d Cir. 2013) (Updating Laffey Matrix to reflect current legal market rates); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:02-CV-0134, 2016 WL 3522964, at *3 (M.D. Pa. June 28, 2016) ("Because attorneys' fees awards must be based on the current market rate, and Plaintiff has submitted evidence of rate increases since my Initial Fee Order, Plaintiff is entitled to increased hourly rates.") (citing *Lanni*, 259 F.3d at 149).

[24] *Rougvie v. Ascena Retail Grp., Inc.*, No. CV 15-724, 2016 WL 4784121, at *12 (E.D. Pa. Sept. 12, 2016) (using 2014 CLS rates as a "measuring stick," and generally finding higher rates to be reasonable). *Rougvie* is attached in PDF form as **Exhibit C** because the electronic version available on Westlaw does not preserve the formatting of various tables in the opinion. The material referenced in 2016 WL 4784121, at *12 is at **Exhibit C**, *Rougvie* PDF, pages 19-20.

-10-

2014 and extending it to 2016.[25] Thus, as a matter of law, Relator is entitled to recover his fees at the 2016 CLS extrapolated rates ($3,113,530.50), plus the uncontested costs ($164,585.49) for a total award of $3,278,115.99, in accord with 31 U.S.C. § 3730(d)(2).

### IV.   Relator's Success

#### A.   The United States Decided to Have Relator Pursue This Case

C&D belatedly re-litigates the merits of this case by erroneously arguing that "the Government's Notice of Declination was not a directive to Relator to pursue the action on its behalf, nor did it delegate the prosecution of this action to Relator."[26] This is completely incorrect. The Government's Notice of Declination specifically stated that:

> Although the United States declines to join in this action, we respectfully refer the Court to the False Claims Act, which allows the relator to maintain the action in the name of the United States.[27]

#### B.   Settling This Case for Twenty-Times the Value C&D Placed on it is a Success

C&D confusingly states that the suit it voluntarily settled to avoid jury review on the eve of trial for $1.7 million plus attorneys' fees was "meritless," and that "after all these years of protracted litigation, the parties ultimately settled for essentially the same sum that Relator unreasonably demanded at the outset." *Id.* at 1.

But now is not the time for the Court to second guess the merits of the underlying

---

[25] Doc. 139, Fee Petition, at 29-32; Doc. 139-19, CLS Rate Extrapolation.

[26] Doc. 143, C&D Opp. at 6.

[27] Doc. 12, Notice of Election to Decline Intervention, at 1. Under the FCA, the United States has three options: intervene; not intervene; or, dismiss the action. 31 U.S.C. §§ 3730(b)(4)(A), (b)(4)(B), and (c)(2)(A). *See also United States ex rel. Wilkins v. United Health Group, Inc.*, 659 F.3d 295, 300 n.6 (3d Cir. 2011). Had the United States believed there was no merit to this case it would have dismissed it.

litigation.[28] Moreover the Government's decision to continue purchasing the ICBM batteries (as

C&D alleges without support) from C&D, its sole source supplier, rather than face the delay and

enormous expense of qualifying another battery supplier is more a reflection of national security

necessity rather than a glowing endorsement of C&D's conduct.[29] The question before this Court

is simply whether the work done by Relator's counsel was "useful and of the type ordinarily

necessary" to secure the result obtained.[30]

     Sidestepping this question, C&D misapplies caselaw reducing attorneys' fees for limited

success. *See id.* at 23. Work that is "useful and of the type ordinarily necessary" is measured by

the success of claims, not a mathematical comparison of the maximum possible damage award to

the amount compromised in a settlement.[31] Here, there was only one claim.

     Finally, C&D's argument that Relator "accomplished nothing more than amass an

inordinate amount of attorneys' fees," *see, e.g.*, *id.* at 1, falsely attempts to rewrite history.

---

[28] *See, e.g.*, *Ward v. Philadelphia Parking Auth.*, 634 F. App'x 901, 905 (3d Cir. 2015) ("Moreover, the Supreme Court has repeatedly explained that plaintiffs need not prevail on the merits of their claims under the fee shifting statute to recover attorneys' fees. 'Nothing . . . conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated.'") (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001); quoting *Maher v. Gagne*, 448 U.S. 122, 129 (1980)).

[29] As explained by C&D's chief engineer, C&D is the sole supplier of these ICBM batteries for the United States, and it would take years for the United States to find and qualify another battery supplier. Doc. 60-6, Heimer Depo. at 45:16 - 46:3. Accordingly, this fact, coupled with the express delegation to Relator to pursue this action on its behalf, establishes that the United States prudently took action against its sole-source supplier while still providing for the national defense.

[30] *Simring v. Rutgers*, 634 F. App'x 853, 861 (3d Cir. 2015) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986)).

[31] *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 434–37 (1983) (discussing the reduction of fee awards for time spent on unsuccessful claims based on different facts and legal theories).

-12-

Relator was unsuccessful in originally convincing C&D to settle this case for $1,500,000 plus fees at the 2014 mediation. Indeed, at the conclusion of that mediation, C&D only offered $175,000 total to settle the False Claims Act case and pay statutory fees and costs. *See* Doc. 139, Fee Petition at 2. Even assuming the dramatic and incorrect reduced fee award now advanced by C&D, Relator effected at least a twenty-fold increase from C&D's 2014 $175,000 bottom line total offer to the present $1.7 million False Claims Act settlement plus attorneys' fees and costs.

C&D's attempts to re-litigate the merits of this case and spin the settlement as an example of limited success fail. Relator prevailed on the only legal theory and the only facts at issue in this case, recovered far more than C&D valued the case, and advanced the interests of the United States (at no cost to the taxpayers) in requiring its contractor to abide by their agreements.[32] Moreover, the size of the ultimate attorney fee award in this case is primarily a result of C&D's intransigence and scorched-earth tactics.

Any implicit or explicit reduction (C&D asks for 20%[33]) in Relator's attorneys' fee award

---

[32] C&D's "success" argument is demonstrably wrong as a matter of fact, but the cases it cites in support of this argument do not counsel for a reduction even if this Court accepts C&D's representations. In *D'Orazio v. Washington Twp.*, No. CIV.A. 07-5097 JEI, 2011 WL 6717427 (D.N.J. Dec. 21, 2011), *aff'd in part, remanded in part*, 501 F. Appx 185 (3d Cir. 2012), the District Court "dismissed most claims on summary judgment and indicated that Plaintiff's damages were limited to $270" and found that "the reality is that Plaintiff accepted a low settlement due to a lack of success at summary judgment," justifying a twenty percent reduction in attorneys' fees. *Id.* at *8. Here, Relator's sole FCA claim survived summary judgment.

*Hall v. Galie*, No. CIV.A. 05-975, 2009 WL 722278 (E.D. Pa. Mar. 17, 2009), is similarly distinct. In *Hall*, "a number of key events in the litigation," including the plaintiff's deposition, occurred while he was proceeding *pro se*; his damages were set by a verdict at $5,100 for one successful claim; and, judgment was entered in favor of the defendants on three causes of action, and against two officers in all respects. *Id.* at *1, *9. *Zebroski v. Gouak*, No. 09-CV-1857, 2011 WL 3565223 (E.D. Pa. Aug. 12, 2011), is another case where damages were fixed by verdict, and the plaintiff lost six of the seven claims she brought. *Id.* at *1.

[33] Doc. 143, Opp. to MTD at 23-24. Incidentally, C&D's proposed 20% reduction is the last piece of the equation reducing Relator's fees to C&D's perennial $1.7 million target.

for limited success should be rejected.

## V.     Additional Time Spent Litigating Fee Petition is Compensable

As discussed in the Fees-on-Fees section of his Fee Petition, Relator is entitled to recover from C&D his fees and costs in litigating this fee petition.[34] Relator's additional attorneys' fees since the August 4, 2016 initial fee detail documented in the original Fee Petition (Doc. 139, Petition & Docs. 139-1, 139-6, Fee Detail) total $91,522.45 at extrapolated CLS rates. **Exhibit A**, Supplemental Helmer Declaration ¶¶5-11 (authenticating **Exhibit A-1**, Helmer-Martins fees incurred since August 4, 2016); **Exhibit B**, Supplemental Begelman Declaration ¶4 (authenticating **Exhibit B-1**, Begelman-Orlow fees incurred since August 4, 2016).

At 2014 CLS rates, <u>total</u> attorneys fees are $2,722,902.20. *See* **Exhibit A-2**, Updated Helmer-Martins Fees; **Exhibit B-2**, Updated Begelman-Orlow Fees. When extrapolated to present value, 2016 rates, those <u>total</u> fees are $3,205,052.95. **Exhibit A-3**, Updated Helmer-Martins Fees, Present Value; **Exhibit B-3**, Updated Begelman-Orlow Fees, Present Value.

Relator's costs incurred since August 4, 2016 are $1,650.69. **Exhibit A**, Supplemental Helmer Declaration ¶¶5-7. Relator's <u>total</u> costs incurred in this action are $166,236.18. *See* Doc. 139-6, Begelman-Orlow Fee Detail at 53-56; **Exhibit A**, Supplemental Helmer Declaration ¶17.

## VI.    Conclusion

Relator Palmer and his counsel litigated this action on behalf of the United States for more than four years, investing considerable time and treasure without any guarantee of recovery.

---

[34] Doc. 139, Fee Petition, at 21 ("Therefore, the additional time devoted to these tasks will be detailed in our Reply memorandum:); *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53-54 (3d Cir. 1978); *see also Simring v. Rutgers*, 634 F. App'x 853, 861 (3d Cir. 2015) (vacating the District Court's decision not to award fees-on-fees incurred by relator's counsel prior to engaging follow-on counsel for the fee petition).

But Relator Palmer prevailed, and he is now entitled to reasonable attorneys' fees. He has satisfied his burden of proving that the fees he seeks are reasonable. He has submitted detailed, contemporaneous time records, supported by declarations of counsel and expert testimony, which establish that the time spent litigating this case was reasonable, useful, and of the type ordinarily necessary in a case of this magnitude and complexity.

C&D now bears the burden of challenging the reasonableness of Relator's attorneys' fees. Instead of meeting that burden with evidence or specific arguments that these fees are unreasonable, C&D simply offers a naked plea to cut Relator's attorneys' fees nearly in half. C&D's "belief" that Relator's attorneys' fees should be less than Relator has proven them to be is incorrect as a matter of fact, and should be rejected as a matter of law.

Relator Palmer and his counsel prevailed in this hard-fought False Claims Act case against C&D. He is now entitled to attorneys' fees. He has shown this Court that the work he did was necessary, and that those fees are reasonable. Accordingly, for the reasons detailed in Relator's Fee Petition (Doc. 139) and in this Reply, as a matter of law, and based on the uncontested evidence presented to this Court, Relator is entitled to a statutory award of $3,205,052.95 in fees and $166,236.18 in costs, in accord with 31 U.S.C. § 3730(d)(2).

Respectfully submitted,

*/s/ James A. Tate*

| | |
|---|---|
| Marc M. Orlow, Esq. | Paul B. Martins, Esq. |
| Ross Begelman, Esq. | James A. Tate, Esq. |
| Begelman, Orlow & Melletz | Helmer, Martins, Rice & Popham Co., L.P.A. |
| 411 Route 70 East, Suite 245 | 600 Vine St., Suite 2704 |
| Cherry Hill, New Jersey  08034 | Cincinnati, Ohio  45202 |

*Counsel for Plaintiff / Relator, Donald Palmer*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 26, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification and an electronic copy of such filing to the following:

| | |
|---|---|
| Thomas J. Finn, Esq. | Michael J. Glasheen, Esq. |
| Paula Cruz Cedillo, Esq. | Katelyn M. Gillece, Esq. |
| McCARTER & ENGLISH, LLP | McCARTER & ENGLISH, LLP |
| City Place 1, 36th Floor | BNY Mellon Center |
| 185 Asylum Street | 1735 Market Street, Suite 700 |
| Hartford, Connecticut 06103 | Philadelphia, Pennsylvania 19103-7501 |

*Counsel for Defendant, C&D Technologies, Inc.*

*/s/ James A. Tate*
James A. Tate