# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CAROL ROUGVIE, et al.** | : | **CIVIL ACTION** |
| | : | |
| **vs.** | : | |
| | : | **NO. 15-724** |
| **ASCENA RETAIL GROUP, INC., et al.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                           **September 12, 2016**

Class and representative actions uniquely allow qualified attorneys to represent both their known clients and numerous, even millions, of unknown clients.  The attorneys appointed as Class Counsel owe fiduciary duties to the absent class members. These duties include timely and accurately recording their invested time when pursuing national consumer protection class claims based on state statutes which generally involve court review of the reasonableness of hourly rates and time invested.  Class Counsel should ensure their contemporaneous description of time invested for the Class accurately and fully describes their effort and, as in any service profession, efficiently provide the necessary services to accomplish the client's objective.  Such rudimentary principles form the basis of professionalism.  Experienced lawyers approved as class counsel understand these fiduciary duties.

As we found in our July 29, 2016 Opinion, Class Counsel performed extraordinary work for the over 18.4 Million Class Members.  Class Counsel is entitled to be paid now for reasonable hours for their efforts on behalf of the Class Members who selected immediate cash or a voucher.  But when, as here, Class Counsel representing over 18.4 Million consumers in a national consumer protection case largely based on state statutes submit time records without adequate descriptions or otherwise do not contemporaneously maintain time records, we must

**Exhibit C**

not approve funds allocated for Class Members to pay for ambiguous uncertain services. We provided Class Counsel three opportunities to clarify their services but still cannot determine the benefit to the Class from several time entries. At this initial hourly fee stage, we will not approve payment of all of the proffered hourly billings without support to be paid from the Class recovery.

## I.    Background

As more fully detailed in our July 29, 2016 Opinion and incorporated today[1], Class Counsel filed a series of class actions seeking injunctive relief and damages from retailer Tween Brands arising from an allegedly deceptive national marketing strategy describing continual 40% off sales on tween merchandise. Class Counsel pursued claims under individual state consumer protection statutes and common law. The statutes generally provided for either mandatory or permissive fee shifting for the prevailing consumer. Although other courts rejected similar consumer claims on a smaller scale, the parties worked over several months and reached a settlement in principle in early July 2015. After preliminary approval, Class Counsel moved for attorney's fees and expenses seeking a percentage recovery but generally describing their lodestar including 500 hours from Robert Mansour, Esquire. At our final hearing on settlement approval and review of Class Counsel's motion for fees and costs, we raised several questions about the undocumented hourly billing in this largely statutory fee shifting matter. Class Counsel initially opposed an inquiry claiming they only sought a percentage of the recovery. We ordered a detailed analysis of the hourly work product on a monthly basis from the beginning of the representation through May 20, 2016.[2]

Contemporaneous with approving the settlement in this national consumer class action, we granted in part Class Counsel's motion for attorney's fees and costs based on the benefit to

2

the Class in two phases: we approved payment of $3,035,125.85 to compensate Class Counsel's demonstrated hourly work subject to our immediate review of detailed invoices. After analysis, we found a 1.75 multiplier to be appropriate and, absent objection, continue to do so today. Given the vast majority of consideration is available through redeemed vouchers, we deferred a fee award based on a percentage of the recovery until we could measure the benefit to the Class based on redeemed vouchers for merchandise sold by Defendants. To satisfy our obligation to the absent Class Members, we ordered Class Counsel to supplement their asserted hourly investment with a comparator reasonableness affidavit and detailed billings.

Class Counsel timely moved *nunc pro tunc* to then increase its asserted lodestar representing an investment of $3,203,135.25, based on 5919.4 hours.[3] Class Counsel filed a comparator affidavit on the reasonableness of some, but not all, of the proffered hourly rates.[4] We again required more specificity and Class Counsel filed a Declaration and attached billing records supporting Class Counsel's new revised lodestar amount.[5]

Class Members Barbara Comlish and Kathryn Artlip (collectively 'Comlish") timely objected arguing 5919.4 hours and the blended rate of $541.12 is excessive. Comlish moves we reduce Class Counsel's hours to 2,500 hours and reduce Class Counsel's blended hourly rate to $400 making Class Counsel's lodestar $1,000,000 and applying the 1.75 multiplier award $1,750,000 in attorneys' fees. Class Counsel filed a vigorous response to Comlish's objections asserting the lodestar hours are reasonable and the hourly rates are not excessive. Class Counsel did not provide more detail for its billing entries. While Comlish raises several fair objections, we similarly cannot grant their broadside challenge and must instead scrutinize the proffered hourly billing.

3

## II.    Analysis

"[A] thorough judicial review of fee applications is required in all class action settlements."[6] "This is so even where the parties have consented to the proposed attorney's fees… because of the risk that the 'lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for re-carpet treatment for fees.'"[7] "Because of the intrinsic conflict of interest between the attorneys for a Rule 23(b)(3) class and the class members when attorneys' fees are a deduction from the fund created for the benefit of the class, fee requests from a fund in court must be subjected to heightened judicial scrutiny."[8] "The District Court has a positive and affirmative function in the fee fixing process, not merely a passive role."[9]

We will not, and do not, attempt to second guess every strategic and staffing decision made by Class Counsel and deduct hours based on hindsight. "The cost effectiveness of various law firm models is an open question, and it is by no means clear whether a larger law firm would have billed more or less for the entire case. The district court may been right that a larger firm would employ junior associates who bill at a lower rate than plaintiff's counsel, but a larger firm would also employ a partner—likely billing at a higher rate than plaintiff's counsel—to supervise them. And the partner in charge would still have had to familiarize himself with the documents, a step that plaintiff's counsel avoided by reviewing the documents herself. Moreover, lead counsel can doubtless complete the job more quickly, being better informed as to which documents are likely to be irrelevant, and which need to be examined closely. Modeling law firm economics drifts far afield of the *Hensley* calculus and the statutory goal of sufficiently compensating counsel in order to attract qualified attorneys to do civil rights work."[10]

The party seeking attorney's fees has the burden to submit evidence of the hours worked and the hourly rate claimed.[11]   The "party opposing the fee award then has the burden to

4

challenge, by affidavit or brief with sufficient specificity to give fee applicant's notice, the reasonableness of the requested fee."[12] The court cannot "decrease a fee award based on factors not raised at all by the adverse party."[13] "However, once the adverse party raises objections to the fee request, the court has a great deal of discretion to adjust the fee award in light of those objections."[14] Our role "at the fee determination stage, [is to] protect the class's interest by acting as a fiduciary for the class."[15]

## A. Objections to Class Counsel's award of hours

Comlish objects to Class Counsel's 5919.4 hours and asks we reduce the compensable hours to 2,500 hours from three perspectives. She argues, at a "macro" level, the hours are excessive when compared to class counsel hours in similar consumer class actions and non-consumer class actions. She objects at a "micro" level to duplicative billing for the same tasks, amount of hours dedicated to conferencing within and among the three law firms, amount of hours dedicated to settlement negotiation, and over-attendance of counsel at hearings. She then objects at a granular level to including hours related to attorney's fees petitions, failure to exclude hours related to coupon relief to avoid double counting, the billing of time in a quarter-hour increment rather than tenths-of-an-hour, vague billing entries by Attorney Mansour, attorneys billing time for drafting *pro hac vice* applications, the inclusion of time spent on unsuccessful motions, Attorney Skipton hours spent reading the Class Action Playbook, and the high hourly rate attorneys performing tasks delegated to lower hourly rate attorneys.

### 1. We will not deduct hours based on strategic and case management decisions.

We will not, and do not, attempt to second guess every strategic and staffing decision made by Class Counsel and deduct hours based on hindsight. We will award fees for time where Class Counsel describes the work completed and we can discern a Class benefit. We cannot, and

5

should not, reconstruct 19 months of litigation and reduce hours based on pure speculation. Class Counsel filed a unique large scale national class action and we not aware of a fair comparator. Each case is different and we will not use a "macro" comparison perspective to strike hundreds of hours in this case because of facts and law in other cases. Instead, fulfilling our obligation to the Class, we must evaluate the efforts on its behalf.

### a. We award detailed time for conferencing within and between Class Counsel.

Comlish objects to 1,728.25 hours billed by Class Counsel for conferences within and between the three (3) law firms. She asks us to reduce those hours by an apparently arbitrary 66%.[16] Comlish provides a chart delineated by firm but provides no cite to Class Counsel's billing records. Class Counsel defends "intra- or – inter office communications" as strategy sessions, meetings regarding hearings and settlement negotiations, and attorneys communicating about research, assignments, and case status. Class Counsel argues Comlish's calculation of 740 hours of "intra- or – inter office communications" for the Pietragallo firm is incorrect and the correct number of hours is 350.

We do not reduce 1,728.25 hours by 66% when we can evaluate time entries demonstrating hours spent conferencing about this case. We cannot in hindsight disqualify hours as unnecessary and providing a Class benefit. We found, after no objection, Class Counsel to be particularly qualified to represent a nationwide 18.4 Million member consumer class. We have no basis to broadly redline two-thirds of their time as "unnecessary".

We must pause to remind Class Counsel their vague billing entries do not often detail the subject of these conferences and meetings. While we cannot strike conferences without a basis to find they did not benefit the Class, we caution Class Counsel they are much better served to accurately describe the substance of their inter- and intra-office conferences. We suspect, as

6

Class Counsel knows from *Loughner*, these commercial lawyers would not expect their commercial clients to pay for vague time entries. As shown below and in the appended chart, we disallow time entries lacking a nexus to moving the case forward.

### b.  We award demonstrated time after the July 2, 2015 initial settlement.

Comlish objects to the 3,211.4 hours Class Counsel billed after the parties reached initial settlement in July 2015.  Comlish argues hours billed post-initial settlement are "more suspect" because Class Counsel faces "virtually no risk of non-recoupment."[17]  She further objects to 540 hours spent briefing settlement approval as excessive and redundant and the 750 hours spent on settlement negotiations and documentation as excessive because of the number of attorneys participating.[18]  Class Counsel argues after July 2, 2015 it negotiated the remaining terms of the settlement agreement, revised drafts of the settlement agreement, responded to filings before the Multi-District Litigation Panel, prepared and appeared in Court hearings, reviewed and responded to objectors, and drafted Long and Short Form Notices, vouchers, press releases, website language, and the escrow agreement for the common fund.

We will not deduct hours because Class Counsel billed those hours after the agreement in principle on July 2, 2015.  We will not deduct hours invested in settlement negotiations, documentation and briefing because we do not find them "excessive, redundant, or otherwise unnecessary."

We "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"[19] As Class Counsel describes, this nationwide consumer class settlement required continued negotiations, briefing, organizing, and drafting notices, vouches, and responses to objectors.  Comlish's reliance on *In re Citigroup Inc Secs. Litig.*[20] to

7

argue post-settlement hours are "more suspect" is misplaced. In *In re Citigroup,* the parties reached settlement in principle then one firm hired 20 new contract attorneys to continue working on discovery while partners and associates stopped billing on this case almost entirely.[21] Class Counsel billed hours working on the settlement, not discovery and Class Counsel did not increase its staff after July 2015. Because we do not find them "excessive, redundant, or otherwise unnecessary",[22] we do not deduct hours invested in settlement negotiations, documentation and briefing.

### c. We find no evidence of duplicative billing.

Comlish objects to Class Counsel's duplicative investing 73.45 hours drafting the *Mehigan* and *Cowhey* complaints, the number of attorneys attending court hearings and redundancies during briefing of settlement approval, researching caselaw, and reviewing orders/documents.[23] We do not find proof of excessive duplication nor do we second guess Class Counsel's staffing decisions so we do not deduct hours based on this objection.

Hours spent on similar complaints have been reduced for duplicative billing.[24] In *Ward*, defendant objected to an attorney billing 14 hours for a complaint "remarkably similar" to a complaint the attorney had *already* drafted in a previous matter.[25] The district court "conduced an independent comparison, and agrees that Attorney Gold spent an excessive amount of time on this task given that the legal analysis in the Complaint is identical to the legal analysis in *Noel*" and reduced attorney's hours from 14 hours to 6.78 hours.[26]

The Pietragallo firm drafted the *Mehigan* and *Cowhey* complaints concurrently. We do not find spending approximately 70 hours to research and draft several complaints at the beginning of a large class action suit to be facially excessive. There is no evidence Class Counsel duplicated work in the three firms. The Mansour Gavin firm billed a maximum[27] of 13

8

hours to review the *Mehigan* complaint, *Cowhey* complaint, and the 1st Amended Complaint and Attorney Westlow spent 2.75 hours doing the same. Class Counsel's hours also decrease with the drafting of the 2nd and 3rd Amended Complaints. The Pietragallo firm spent approximately 20 hours drafting and filing the 2nd Amended Complaint and approximately 13 hours drafting and filing the 3rd Amended Complaint. Mansour Gavin billed a maximum of 10.25 hours or less reviewing the 2nd and 3rd Complaints and Attorney Westlow spent 1.5 hours reviewing both.

We do not deduct hours from the drafting of complaints nor we do we second guess Class Counsel's staffing decisions because we do not find proof of duplication.[28]

### d. We award reimbursement for hours invested on fee petitions.

Comlish objects to hours billed by Class Counsel to brief its attorneys' fees as non-compensable because they do not benefit the class.[29] Class Counsel argues Comlish incorrectly relies on *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (hereafter "*Lindy II*") and hours invested in fee petitions are recoverable is this case.[30] We will not deduct the hours Class Counsel spent preparing its fee petitions because "[a] party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application."[31]

Comlish cites *Lindy II*, where our Court of Appeals denied attorneys' fees for time spent petitioning for attorneys' fees from the common fund. *Lindy II* is a multidistrict class action settlement for plumbing fixtures.[32] Members of the settlement fund are categorized into three classes, those represented by the attorneys seeking fees, those represented by attorneys not involved in the appeal, and the third group not presently represented by counsel and would not be represented until after final court approval for the settlement.[33] The settlement fund is a common fund and attorneys' fees come from the same finite pool of money where plaintiffs seek

9

their recovery. Our Court of Appeals reversed the District Court's award of hours spent on fee applications because the time spent seeking fees from the fund benefited only the attorneys to the detriment of claimants who could face reduced or no recovery from the depleted common fund.[34]

*Lindy II* does not apply to the settlement fund structure here.[35] The parties structured the settlement fund to cover awards to class members, administrative fees, and attorneys' fees.[36] The parties agreed that Class Counsel could apply for up to $14.1 million in attorneys' fees so no Class Member will lose recovery because of attorneys' fees.[37]

We find time invested on fee petitions should be reimbursed. *Pardini* is a Title VII class action settlement where the parties agreed the defendant would pay the class members $100,000 and expenses and, separately, the defendant would pay reasonable attorneys' fees up to $50,000.[38] The district court, relying on *Lindy II*, denied attorneys' fees for time spent on the fee petition.[39] Our Court of Appeals reversed the district court because a statute awarded the attorneys' fees and the settlement fund was not an equitable fund.[40] "Here, the attorneys' fees do not come out of, nor do they reduce, the plaintiffs' recovery…The fact that any of the $50,000 which is not awarded to plaintiffs' attorneys will not be paid to the plaintiffs to augment their settlement fund, as is the case in the normal common fund situation. Rather, any such excess will be returned to the defendant National. It is this fact which ultimately makes this case distinguishable from Lindy II, and requires a different result."[41]

We will not deduct the hours Class Counsel spent preparing its fee petitions because "[a] party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application."[42]

10

### e. We do not strike time related to coupon relief.

Comlish objects to Class Counsel's failure to exclude time relating to coupon relief because it will result in double counting. We addressed this issue in our Opinion.[43] We awarded attorneys' fees based on the present actual benefit to the Class Members who choose the cash payment and Class Members who choose the voucher over a cash payment.[44] We will apply the percentage-of-recovery method based on coupons after their exercise and deduct the present actual value of the affirmative claim vouchers we are factoring into the attorneys' fees awarded today.[45] Class Counsel does not need to exclude time relating to coupon relief because it will not be double counted.

### f. We do not strike hours invested on unsuccessful motions.

Comlish objects to Class Counsel receiving fees for time spent on two unsuccessful motions, the motion for appointment of counsel and motion to strike the Gallagher objectors at the preliminary approval stage. Class Counsel argues our Circuit caselaw allows the award of fees for unsuccessful and unfiled motions so long as they contribute to the case outcome. We do not deduct hours invested in motions because the motion is later denied.

There is no caselaw requiring Class Counsel to exclude hours spent on denied motions. Time spent on unnecessary or unreasonable motions has been excluded but time invested in unsuccessful motions not excluded from fee petitions.[46] These motions were not unnecessary or unreasonable we will not exclude Class Counsel's hours spent on the motion for appointment of counsel and motion to strike the Gallagher objectors.

### g. We do not deduct time for experienced litigators charging for "basic" work.

Comlish objects to the 1.7 hours Attorney Skipton billed to read the first and second chapters of Class Action Playbook and the .5 hours Attorney Westlow billed to "re: suggestions

11

for inducing more class representatives to file claims." We will not deduct 2.2 hours because these hours are *de minimis* for an experienced litigator to refresh their skills.

Comlish objects to Attorney Skipton drafting *pro hac vice* motions for 11 hours at $375 an hour. Class Counsel argues our Policies require an additional affidavit for attorney's *pro hac vice* motions and argue it appointed an associate because several attorneys had their admissions denied.[47] "We cannot condone 'the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals."[48] Attorney Skipton is an attorney with 5 years at the Bar according to Attorney Boni's declaration and drafting a *pro hac vice* motion is associate work. A review of the bill has 4.4 hours dedicated exclusively to *pro hac vice* motions and another 6.2 hours where drafting *pro hac vice* motions is combined in one billing narrative with other tasks.[49] We will not second guess staffing decisions in preparing *pro hac vice* motions particularly after we denied initial *pro hac vice* motions as non-compliant.

### 2. We deduct hours too vague to benefit the Class.

Class Counsel must contemporaneously and fully describe their work so we and the Class can assess if they are efficiently providing the necessary service to accomplish the client's objective. We deduct hours too vague to determine if they benefited the Class.

#### a. Robert Mansour cannot recover an hourly fee.

Comlish objects to Robert Mansour's hours as inadequately documented and requests his hours be eliminated.[50] We find Robert Mansour's vague summary of his role in this litigation does not meet the minimum requirements for reimbursement of fees on a lodestar basis and we deduct his 500 hours from Class Counsel's loadstar calculation. As he cannot properly document his time, he will have to await any common fund distribution based on the benefit to

the Class, as he anticipated when he started this case. We do not doubt he provided effort and appears to have introduced the case and possibly a plaintiff to the other Class Counsel. But he is general counsel to a title company and elected to not contemporaneously keep track of his invested time in this side endeavor.

On March 18, 2015, Class Counsel[51] filed an initial Motion for Award of Attorneys' Fees, Expenses and Incentive Awards.[52] At Exhibit 4, Robert Mansour stated he spent "approximately 500 hours on this case, from its inception through March 11, 2016."[53]

In a May 31, 2016 post fairness hearing memorandum, Class Counsel[54] submitted amended and supplemental declarations.[55] Anthony Coyne, president of Mansour Gavin, LPA, swore Mansour Gavin and *co-counsel* Robert Mansour (collectively referred to therein as "Mansour Gavin") spent 2,507 hours on representing the Class from inception through May 25, 2016 at a blended hourly rate of $532.60.

In an August 12, 2014 supplemental declaration,[56] Attorney Coyne swore he reviewed Mansour Gavin's time and expenses and affirmed them. Attorney Coyne admitted his previous declaration overstated hours and fees. Attorney Coyne previously swore an hourly investment of $1,335,729.60 through May 25, 2016, comprising 2,507 hours at a $532.80 blended rate, and which included Robert Mansour's reported lodestar of $300,000.00.[57] The corrected lodestar for Mansour Gavin *only* according to Attorney Coyne is $1,203,730.00, comprising 2,254 hours at a blended rate of $534.04. This corrected lodestar does not include Robert Mansour's $300,000.00 amount, according to Attorney Coyne.[58]

Following our August 16, 2016 Order directing Class Counsel to file contemporaneously-created invoices or time records[59], Robert Mansour responded by swearing as to an estimate of his hours:

13

1. When I first became involved in this matter, it was based upon the assumption that the attorney fees would be on a contingent basis. Therefore, I did not record my time on a day-to-day calendar, but I have, to the best of my ability, estimated the time I have spent on this matter.

2. …I cannot certify that the approximation of hours is specifically accurate. It is the best I can do since I began working on this matter in March of 2014. I have summarized from memory the work I spent in discovery, both of a factual nature and a legal nature, together with numerous meetings.[60]

"The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly."[61] Robert Mansour admits he did not keep contemporaneous time records. While in limited circumstances, our Court of Appeals permits attorneys' fees based on reconstructed time accounts, such accounts must provide sufficient detail to allow opposing counsel to attack specific items.[62]

Robert Mansour's estimated fees raise several issues:

- Robert Mansour submitted a petition for admission *pro hac vice* attesting he is General Counsel for Competitive Title Agency.[63]

- As general counsel for a title agency, Robert Mansour does not describe any level of expertise in class action litigation.

- Robert Mansour now claims he spent 500 hours in protecting the Class in addition to being general counsel for a title agency.

- Robert Mansour began accruing time billed to the Class in March 2014, while other Class Counsel began time entries no earlier than January 28, 2015. We have no basis to find he did anything by himself for over nine months to benefit the Class.

- In March 2016, Robert Mansour swears he spent (the round number) 500 hours from inception of this case though March 16, 2016 (ECF Doc. No. 99, p. 40). On August 18, 2016, Robert Mansour submitted reconstructed time estimates including for two additional months (April and May 2016), although his estimated time remains 500 hours.

14

We rely on an attorney's billing records to determine the proper level of the fee award. "To enable such calculation it is imperative that attorneys keep clear billing records throughout the case; indeed district courts have the authority to reduce a fee award if documentation is inadequate."[64]

Robert Mansour's vague and somewhat evolving summary of his role in protecting the Class does not meet the minimum requirements for reimbursement of fees on a lodestar basis. In reviewing the remaining Class Counsel's contemporaneous time records, we note scant references to Robert Mansour's participation in hundreds of class counsel conferences. Without adequate documentation of hours invested by Robert Mansour, we reject Class Counsel's request for $300,000 in legal fees based on Robert Mansour's claim of 500 hours at his $600 hourly rate.

### b. We will not permit recovery for time based on vague billing entries.

Comlish objects to Class Counsel's billing narrative as vague and moves we exclude those hours because we cannot tell if they were beneficial to the Class. We reviewed the billing records and found 192 entries too vague for us to determine whether the work provided a benefit to the Class.

We review *in camera* billing narratives to ensure they are detailed enough for Class Members and us to determine if the work benefited the Class. We cannot "authorize the payment of attorney's fees unless the attorney involved has established by clear and convincing evidence the time and effort claimed and shown that the time expended was necessary to achieve the results obtained."[65] "A fee petition should include "some *fairly definite* information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys."[66]

15

Bearing in mind our duty to the Class, we strike Class Counsel's entries as too vague for us to determine the benefit to the Class as shown in the appended chart, including generally:[67]

- Entries regarding telephone communications by and among Class Counsel which list the persons present but do not describe the topics covered on the call.

- Entries with Class Counsel scheduling a conference, participating in a conference or conferring with each other without a description of what happened.

- Entries with Class Counsel reviewing, responding, and drafting emails with no description of the subject of the email and how it benefits the class.

- Entries with Class Counsel meeting or preparing for a meeting with no description of how they prepared or the subject of the meeting.

We reviewed Class Counsel's billing narratives individually and asked how the Class benefited from Class Counsel's activity. We gave Class Counsel the benefit of the doubt when there is some indication of beneficial activity, "conference call re: settlement." But one-hundred and ninety two (192) entries lacked "some fairly definite information" as to how the hours were spent and leave us unable to determine the benefit to the Class. Accordingly, as specifically described on the appended chart, we deduct 157 hours equaling $95,811.30 of entirely vague time descriptions from Class Counsel's lodestar.[68]

### c. We reduce uncertain quarter hour billing increments.

Comlish objects to Attorney Pietragallo[69], Attorney Westlow, and the Mansour Gavin firm who bill in both quarter-hour increments and tenths-of-the-hour. Class Counsel argues there is no prohibition on quarter hour billing in our Circuit. We impose a 12.5% reduction of hours where Class Counsel billed just .25 hours for phones calls, reviewing emails, or reviewing ECF documents.

16

There is no prohibition on quarter hour billing in our Circuit.[70] But attorneys who billed at the quarter-hour increments have their time reduced by a percentage, particularly for tasks like reviewing emails, phone calls, leaving voicemails, and reviewing simple court notices.[71]

Attorney Friesen billed just .25 hours 71[72] times totaling 17.75 hours. At $500 an hour this cost the Class $8,875 for items such as phone calls, reading emails, and reviewing notices. Reducing 17.75 hours by 12.5% reduces to 15.53 hours for a total of $7,765.25. Attorney Coyne billed .25 hours 5 times totaling 1.25 hours. At $600 an hour, he cost the Class $750 and,reducing this 1.25 hours by 12.5% , would reduce to 1.09375 hours for a total of $656.25.

Attorney Westlow billed in both tenths of an hour and quarter of an hour increments and we are unable to discern any reason for his distinctions and he elected not to describe his reasons. On April 21, 2015, Attorney Westlow invested 0.1 hours in reviewing an Order granting *pro hac vice* admission but on September 21, 2015 (months after the July 2, 2015 settlement agreement) it took him .25 hours to review another Order granting *pro hac vice*.[73] Because Attorney Westlow billed on the tenth of an hour, we reviewed his quarter hour billing entries and deducted 48 entries which could not have reasonably taken .25 hours. These entries were for reviewing routine ECF notifications like Notice of Appearance[74], Orders granting *pro hac vice*[75], Certificates of Service[76], and our one sentence Order granting a motion for a conference call.[77] Other .25 entries were for providing availability for conference calls and meetings[78] and unavailability when drafting and transmitting out-of-office notice to the group.[79] Reducing 12 hours by 12.5% reduces his .25 billings to 10.5 hours for a total of $6,300.00.

We reduce Attorney Friesen hours by 2.22 hours, Attorney Coyne by .16 hours, and Attorney Westlow by 1.53 hours for tasks more appropriate for a tenth-of-the-hour increment. Together, we deduct 3.89 hours totaling $2,124.00 from Class Counsel's lodestar.

17

## B.    Challenges to Class Counsel's hourly rates.

Comlish objects to the reasonableness of Class Counsel's hourly rates[80] because Class Counsel did not discount its time below the full rate for low level tasks completed by those with high billing rates or delegate those low level tasks to an associate, paralegal, or legal assistant. Comlish objects to the blended rate of $541.12 as beyond the normal blended rate in this Circuit. Comlish requests we reduce the blended rate to $400.

### 1.    We will not second guess delegable tasks.

Comlish objects to the reasonableness of Class Counsel's rate because Class Counsel did not discount its time below the full rate for low level tasks completed by those with high billing rates or delegate those low level tasks to an associate, paralegal, or legal assistant. We do not find partners entries for tasks that should have been clearly completed by an associate or paralegal and do not deduct hours from the lodestar.

We have the discretion to reduce time billed by partners to a lower associate level rate if we determine the tasks were improperly assigned.[81]  In *In re Fine Paper,* our Court of Appeals upheld a district court's reduction of partner time to associate time but noted their differing judgment of the same tasks.[82]  "While we think that much of time might reasonably be classified as appropriate for partners, we cannot hold that there was an abuse of discretion."[83]  We will not, and do not, attempt to second guess every strategic and staffing decision made by Class Counsel and deduct hours based on hindsight. As explained in *Moreno* "[t]he cost effectiveness of various law firm models is an open question" and cautioned "[m]odeling law firm economics drifts far afield of the *Hensley* calculus."[84]

We reviewed the objectionable tasks Comlish cites, bearing in mind our role in protecting the Class, and do not find any tasks to be obviously associate level work.  We refrain from

18

second guessing staffing choices within a law firm with speculation about specific attorneys'
expertise and skill sets.

### 2. We approve demonstrated reasonable rates.

Comlish objects to the rates as beyond the normal rates in this Circuit. Comlish requests
we reduce the blended rate to $400. Class Counsel argues it billed attorneys' market rates and
attached a declaration attesting to the reasonableness of those rates. Class Counsel produced
satisfactory evidence for the reasonableness of 20 attorneys' billing rates and we approve those
rates. Class Counsel failed to meet its burden of producing evidence of the reasonableness of 9
attorneys' rates so we will reduce the Pietragallo bill by $19,395.00 and the Mansour Gavin bill
by $24,750.00.

"Generally, to determine the reasonableness of an attorney's hourly rate for the purposes
of awarding fees, courts begin by looking to the attorney's customary billing rate for fee-paying
clients."[85] "The prevailing party bears the burden of establishing by way of satisfactory
evidence, 'in addition to [the] attorney's own affidavits' that the requested hourly rates meet this
standard."[86] The party seeking fees "bears the burden of establishing by way of satisfactory
evidence, in addition to [the attorney's own affidavits...that the requested hourly rates meet this
standard."[87] "Ever since *Lindy I* this court, both in fund in court cases and in statutory fee cases,
we have reiterated that individual determinations of reasonable billing rates are required for the
lodestar determination. Our premise has been that the reasonable value of an attorney's time is
the price that time normally commands in the marketplace for legal services in which those
services are offered."[88] The Third Circuit uses the Community Legal Services, Inc. fee schedule
as a measuring stick for prevailing hourly rates for attorneys in Philadelphia.[89]

19

Class Counsel provided an affidavit by Attorney Michael Boni attesting to the reasonableness of 20 attorneys' rates. The chart below compares the attorney's rate to the Community Legal Services range for an attorney with comparable experience. We find the 20 attorneys' rates covered in Attorney Boni's declaration are reasonable and will not reduce any of those attorneys' billing rates:

| Attorney Name | Years at the Bar[90] | Actual rate | CLS Range[91] |
|---|---|---|---|
| Ernest Mansour | 61 | $600 | $600-650 |
| William Pietragallo | 44 | $725 | $600-650 |
| Edward J. Westlow | 37 | $600 | $600-650 |
| Robert Mansour | 30 | $600 | $600-650 |
| Kevin Raphael | 22 | $675 | $520-590 |
| Brendon Friesen | 13 | $500 | $350-420 |
| Edward Skipton | 5 | $375 | $200-250 |
| Anthony Coyne | 28 | $600 | $600-650 |
| Jason Kreps | 4 | $300 | $200-250 |
| Alex Owens | 2 | $250 | $200-250 |
| Kenneth D. McArthur | 20[92] | $675 | $520-590 |
| Marc S. Raspanti | 28 | $725[93] | $600-650 |
| James W. Kraus | 25 | $675 | $600-650 |
| Mark T. Caloyer | 26 | $500 | $600-650 |
| Doug M. Hall | 17 | $500 | $435-505 |
| Elisa M. Brody | 2 | $225 | $200-250 |
| Jeffery M. Embleton | 40 | $600 | $600-650 |
| Jennifer E. Horn | 9 | $350 | $265-335 |

| Emily O'Connor | 1 | $300 | $180-200 |
| Miles P. Welo | 1 | $300 | $180-200 |

Three attorneys appear in the Pietragallo billing summary, Kerry Rodgers (28.90 hours at $225.00), Harriet Ruffin (49.50 hours at 225.00), and Nancy Garrett (7.8 hours at $225.00) totaling $19,395 but are not included in Attorney Boni's Declaration and no evidence is offered as to the reasonableness of their rates.[94]

Mansour Gavin seeks fees for five attorneys in the Billing Summary who are not included in Attorney Boni's Declaration. No evidence is offered as to the reasonableness of their rates. We will not award fees without a reasonableness opinion as to Jaclyn C. Staple (.20 hours at $200.00), Matt Martin (75.90 hours at $200.00), James Gianfagna (10.00 hours at $200.00), Olivia Buller (20.30 hours at $200.00), Emily O'Connor[95] (15.10 hours at $200.00), and Chris Sponseller (2.25 hours at $200.00).[96]

The party seeking fees "bears the burden of establishing by way of satisfactory evidence, in addition to [the attorney's own affidavits...that the requested hourly rates meet this standard."[97] Class Counsel failed its burden of producing evidence of the reasonableness of these three attorneys' rates so we will reduce the Pietragallo bill by 86.2 hours totaling $19,395.00 and the Mansour Gavin bill by 123.75 hours totaling $24,750.00.

## III.   Conclusion

As held in our July 29, 2016 Order and Opinion, Class Counsel performed to the level expected with their experience and obtained a significant result in an unsettled area of consumer law. They deserve to be paid. We will not second-guess experienced trial counsel's allocating attorneys' skills to meet the needs of a national consumer protection case so long as the attorneys

contemporaneously describe their efforts as they would for monthly clients. As shown by the majority of the billing, Class Counsel knows this lesson. They are established commercial lawyers well versed in fiduciary duties to their clients. Class Counsel specifically researched the individual states' statutory consumer protection regimes and we approve compensation for this research. If not independently informed by a fiduciary duty, their research would confirm a court could review their time entries at least to show the reasonableness of a lodestar comparator or, as we have done, to measure benefit to the Class based on the statutory fee shifting paradigm in most consumer protection statutes. When, even to a minor extent, Class Counsel does not properly report their time invested, we cannot permit funds owing to Class Members to be paid for these efforts. Our accompanying Order reflects this scrutiny.

---

[1] ECF Doc. No. 183.

[2] ECF Doc. No. 164.

[3] ECF Doc. No. 195, 195-1, 195-2

[4] ECF Doc. No. 194

[5] ECF Doc. No. 201, 201-1, 201-2, 201-3, and 201-4

[6] *In re Prudential Ins. Co. American Sales Practice Litigation Agent Actions,* 148 F.3d 283, 333 (3d Cir. 1998) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 819 (3d Cir. 1995)); *see also In re Baby Products Antitrust Litigation*, 708 F.3d 163, 178–80 (3d Cir. 2013); *McDonough v. Toys R Us, Inc.*, 80 F. Supp.3d 626, 649-50 (E.D. Pa. 2015).

[7] *O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 WL 3242365, *20 (D.N.J. Aug. 9, 2012) (quoting *In re Gen. Motors*, 55 F.3d at 820).

---

[8] *In re Am. Integrity Sec. Litig.*, No. 86-7133, 1989 WL 89316, at \*4 (E.D. Pa. Aug. 8, 1989).

[9] *Loughner v. University of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001). These concepts are well-known to the experienced Class Counsel we found appropriate to represent the over 18.4 million consumers. In *Loughner*, lead Class Counsel William A. Pietragallo, II served as lead counsel for the defendants in appealing the district court's award on attorneys' fees because plaintiff's attorney failed to present objective, admissible evidence of the prevailing market rate and failed to assign different hourly rates to various tasks.

[10] *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114–15 (9th Cir. 2008).

[11] *See Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990).

[12] *Id.* (citing *Bell v. United Princeton Prop., Inc.,* 884 F.2d 713, 720 (3d Cir.1989)).

[13] *Id.*

[14] *Id.*

[15] *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307–08 (3d Cir. 2005), as amended (Feb. 25, 2005) (citing *In re Cendant Corp. Litigation*, 264 F.3d 201, 231 (3d Cir. 2001) ("[T]he District Court acts as a fiduciary guarding the rights of absent class members[.]")); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280–81 (7th Cir. 2002) ("We and other courts have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries."); *Report of the Third Circuit Task Force, Court Awarded Attorneys Fees*, 108 F.R.D. 237, 251 (1985) (The court "must monitor the disbursement of the fund and act as a fiduciary for those who are supposed to benefit from it, since typically no one else is available to perform that function."); cf. *Cendant*, 264 F.3d at 255 ("[A]n agent must be located to oversee the relationship between the class and its lawyers," and "[t]raditionally, that agent has been the court.")).

[16] ECF Doc. No. 210 at 9.

[17] *Id.* at 6.

[18] *Id.* at 10-11.

[19] *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 362 (3d Cir. 2001).

[20] *In re Citigroup Inc Secs. Litig.*, 965 F. Supp. 2d 369, 391-392 (S.D.N.Y. 2013)

[21] *Id.* at 391-392.

[22] *Evans*, 273 F.3d at 362.

[23] ECF Doc. No. 201 at 9-11.

[24] *See Ward v. Phila. Parking Authority*, Civil Action No. 11-4692, 2015 WL 263733 at *9 (E.D. Pa. Jan. 21, 2015).

[25] *Id.* at *9.

[26] *Id.*

[27] Class Counsel used block billing for several entries regarding the complaints. We count all the hours in the block billing as the outside maximum Class Counsel spent on the complaint.

[28] *See Moreno*, 534 F.3d at 1114–15.

[29] ECF Doc. No. 210 at 12.

[30] *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.* 540 F.2d 102, 110-111 (3d Cir. 1976)(en banc)(hereafter "*Lindy II*")

[31] *Planned Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey*, 297 F.3d 253, 268 (3d Cir. 2002) (citing *Pardini v. National Tea Company*, 585 F.2d 47 (3d Cir. 1978)).

[32] *Lindy II*, 540 F.2d at 107.

[33] *Id.*

[34] *Id.* at 110-111.

[35] ECF Doc. No. 183 at 45.

[36] *Id.* at 46.

[37] *Id.* at 46-47.

[38] *Pardini*, 585 F.2d at 49.

[39] *Id.* at 52.

[40] *Id.* at 53.

[41] *Id.*

[42] *Planned Parenthood*, 297 F.3d at 268 (citing *Prandini*, 585 F.2d at 53).

[43] ECF Doc. No. 183 at 47.

[44] *Id.* at 47.

[45] *Id.* at 53.

[46] *See Cottillion v. United Refining Company*, Civil Action No. 09-140 Erie, 2016 WL 3551688 (W.D. Pa. June 30, 2016) (District Court refused to wholesale deduct time Plaintiffs' counsel spent on unsuccessful motions or alternative case theories but reviews them to determine if the hours spent were excessive); see also *Catello v. Oriental Weavers Rug Mfg. Co. Inc.*, No. 01-1060, 2003 WL 25888376 at *7 (W.D. Pa. Jan. 30, 2003) (District court allows attorneys' fees for timely filed but ultimately denied motions but removes hours for motions not filed on time).

[47] ECF Doc. No. 216 at 10.

[48] *Halderman by Halderman v. Pennhurst State School & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995) (quoting *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983)).

[49] ECF Doc. No. 201-1 at 21-23, 29-30, 34.

[50] ECF Doc. No. 210 fn. 5.

[51] Defined to include "Pietragallo Gordon Alfano Bosick & Raspanti, LLP, Mansour Gavin LPA, Edward J. Westlow, Esquire and Robert Mansour, Esquire." ECF Doc. No. 99, at 1.

[52] ECF Doc. No. 99.

[53] ECF Doc. No. 99-4 ¶ 4.

[54] Class counsel in the supplemental memorandum is defined to include Pietragallo Gordon Alfano Bosick & Raspanti, LLP, Mansour Gavin, LPA and Edward Westlow, Esq. ECF Doc. No. 167.

[55] ECF Doc. No. 167, Exh. 2.

[56] ECF Doc. No. 194-1, ¶5.

[57] *Id.* at ¶¶6, 7.

[58] *Id.* at ¶7.

[59] ECF Doc. No. 197.

[60] ECF Doc. No. 201-4.

[61] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

---

[62] *See Keenan v. City of Phila.,* 983 F.2d 459, 472–73 (3d Cir.1992)(noting monthly cumulative hourly totals insufficient, but remanding for opportunity to amend); *J&J Sports Prods., Inc. v. TCOS Enterprises, Inc.*, No. 10-7130, 2012 WL 1361655, at \*3 (E.D. Pa. Apr. 19, 2012); *see also Walker v. Upper Merion Police Dep't*, No. 94-4888, 1996 WL 37822, at \*7 (E.D. Pa. Jan. 26, 1996)(disallowing counsel's fee request which lacked specificity).

[63] ECF Doc. No. 24, ¶1.

[64] Rubenstein, W., Newberg on Class Actions § 15:6 (5th ed.) (citing *Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); *Scott v. City of New York*, 626 F.3d 130 (2d Cir. 2010); Newberg on Class Actions § 15:51 (5th ed.)(Attorneys' failure to maintain adequate contemporaneous time records may be a basis for downward adjustment in a fee request).

[65] *Hensley*, 461 U.S. at 440–417.

[66] *Keenan*, 983 F.2d at 473(internal citations omitted)(emphasis added).

[67] *See In re Rite Aid*, 396 F.3d at 307–08.

[68] *See Keenan*, 983 F.2d at 473.

[69] We do not find any objectionable .25 entries by Attorney Pietragallo, nor did Class Counsel. *See* ECF Doc. 216 at 6.

[70] Bankruptcy courts in our District prohibit quarter hour increments. *See In re Jefsaba, Inc.*, 172 B.R. 786, 801 (Bankr.E.D.Pa. 1994).

[71] *See Roccisano v. Twp. Of Franklin*, Civ. Action No. 11-6558, 2015 WL 3649149 (D.N.J. June 11, 2015) (District Court reduces attorneys' fees by 1.8 hours for 18 occasions where attorney billed .25 hours "for tasks such as leaving a phone message, reviewing notice of phone conference, and reviewing an email from Defendant's request for adjournment"); *see also United States v. NCH Corp.*, Civil Action Nos. 98-5268 & 05-881, 2010 WL 3703756 (D.N.J. September 10, 2010) (the District Court imposes a 12.5% fee reduction for billings in the quarter hour as opposed to the tenth of the hour).

[72] Attorney Friesen billed .25 hours 78 times but we struck 7 of those entries are too vague in Section 2b.

[73] ECF Doc. No. 201-3 at 6, 22.

[74] *Id.* at 12.

[75] *Id.* at 22, 44.

[76] *Id.* at 12, 37.

[77] *Id.* at 36.

[78] *Id.* at 10, 23, 24.

[79] *Id.* at 12.

[80] Comlish objects to the blended rate as too high and cites cases with lower blended rates perhaps mislead by Class Counsel's continued use of the phrase. This argument is not correct for a statutory fee case because Class Counsel is awarded the hours and time billed in its lodestar. We review the reasonableness of Class Counsel's actual rates.

[81] *See In re Fine Paper Antitrust Litigation*, 751. F.2d 562, 593 (3d Cir. 1984).

[82] *Id.* at 593.

[83] *Id.*

[84] *Moreno*, 534 F.3d at 1114–15.

[85] *M.M. v. Sch. Dist. of Philadelphia*, 142 F. Supp. 3d 396, 404-45 (E.D.Pa. 2015) (citing *Student Pub. Interest Research Group of New Jersey. Inc. v. AT & T Bell Laboratories*, 842 F.2d 1436 (3d Cir. 1988)).

[86] *Washington v. Philadelphia Cty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11 (1984))(internal citations omitted).

[87] *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 (3d Cir. 2005) (quoting *Loughner,* 260 F.3d at 180).

[88] *In re Fine Paper*, 751 F.2d at 590 (finding legal error in a district court applying hypothetical national rates to all class counsel regardless of their market rate).

[89] *See Maldonado v. Houstoun*, 256 F.3d 181, 187-188 (3d Cir. 2001).

[90] CLS bases its range off of years of experience while the Boni Declaration uses length of membership in the bar. It is not clear that these match up to actual legal experience.

[91] *Attorney Fees Range of Hourly Rates*, Community Legal Services (September 12, 2014), https://clsphila.org/about-cls/attorney-fees.

---

[92] Attorney Boni attests Kenneth D. McArthur has "been a member of the bar for over twenty years" but does not offer an exact number. ECF Doc. No. 194-1 at 4. We will count this as 20 years experience.

[93] Attorney Boni lists Attorney Raspanti with a billing rate of $675. The legal bills produced by the Pietragallo firm list his billing rate as $725 which we will use as the correct billing amount. ECF Doc. 201-1 at 260.

[94] ECF Doc. 201-1 at 260-261.

[95] There are two separate entries for Emily O'Connor in the Mansour Gavin bill. Emily S. O'Connor who billed 69.25 hours at $300.00 and Emily O'Connor who billed 15.10 hours at $200.00.

[96] ECF Doc. 201-2 at 78.

[97] *Interfaith*, 426 F.3d at 703 (quoting *Loughner*, 260 F.3d at 180).

| FIRM | Attorney | Rate | Date | Hours | Narrative | ECF Doc cite | Cost |
|------|----------|------|------|-------|-----------|--------------|------|
| Mansour | EPM | 600 | 2/2/2015 | 4 | Work on file | 201-2 at 4 | 2400 |
| Mansour | EPM | 600 | 2/6/2015 | 2 | Conference with Bob Mansour | 201-2 at 5 | 1200 |
| Mansour | BPF | 500 | 2/5/2015 | 0.5 | Phone conference Kevin Raphael | 201-2 at 5 | 250 |
| Mansour | EPM | 600 | 2/5/2015 | 4 | Work on file | 201-2 at 5 | 2400 |
| Mansour | EPM | 600 | 2/13/2015 | 2 | Prepare for conference call; attend conference call | 201-2 at 7 | 1200 |
| Mansour | BPF | 500 | 2/17/2015 | 0.25 | Phone conference Kevin Raphael | 201-2 at 8 | 125 |
| Mansour | AJC | 600 | 2/26/2015 | 1.5 | Prepare for and attend conference call with co-counsel and separate conference with Mr. Mansour; review emails | 201-2 at 9 | 900 |
| Mansour | BPF | 500 | 3/2/2015 | 1 | Prepare for and attend phone conference with Pietragallo office | 201-2 at 10 | 500 |
| Mansour | BPF | 500 | 3/3/2015 | 0.25 | Phone conference Kevin Raphael | 201-2 at 11 | 125 |
| Mansour | AJC | 600 | 3/6/2015 | 1 | Review various emails; phone conference Mansour | 201-2 at 11 | 600 |
| Mansour | BPF | 500 | 3/9/2015 | 3 | Meeting with Bill Pietragallo, Pat Perrotti, JME and AJC | 201-2 at 11 | 1500 |
| Mansour | BPF | 500 | 3/11/2015 | 0.5 | Confer with Kevin Raphael and Ed Shipton | 201-2 at 12 | 250 |
| Mansour | JME | 600 | 3/12/2015 | 1 | Conference call with all co-counsel | 201-2 at 12 | 600 |
| Mansour | EPM | 600 | 3/17/2015 | 2.5 | Conference call with Pietragallo firm; conference with BPF | 201-2 at 13 | 1500 |
| Mansour | BPF | 500 | 3/17/2015 | 0.25 | Phone conference Bill Pietragallo and Kevin Raphael | 201-2 at 13 | 125 |
| Mansour | JME | 600 | 3/17/2015 | 1 | Phone conference Pat Perotti ; conference call Pietragallo firm | 201-2 at 13 | 600 |
| Mansour | EPM | 600 | 3/24/2015 | 1.5 | Conference call; work on settlement | 201-2 at 14 | 900 |
| Mansour | EPM | 600 | 4/6/2015 | 3 | Conference with AJC and BPF covering all emails, etc. | 201-2 at 16 | 1800 |
| Mansour | EPM | 600 | 4/9/2015 | 3 | Work on file preparing for meeting; conference with BPF re presentation | 201-2 at 17 | 1800 |
| Mansour | EPM | 600 | 4/14/2015 | 2 | Conference with Bill Pietragallo; conference with Kevin Raphael; meeting with BPF; conference with Bob Mansour | 201-2 at 18 | 1200 |
| Mansour | EPM | 600 | 4/17/2015 | 4.5 | Work on agreement | 201-2 at 18 | 2700 |
| Mansour | EPM | 600 | 4/18/2015 | 2.5 | Continued work on agreement; review of numerous emails | 201-2 at 19 | 1500 |
| Mansour | JME | 600 | 4/20/2015 | 0.5 | Conference with AJC and BPF | 201-2 at 19 | 300 |
| Mansour | BPF | 500 | 4/28/2015 | 0.5 | Meeting with EPM and AJC | 201-2 at 20 | 250 |

| Mansour | AJC | 600 | 5/1/2015 | 1.25 | Meeting with Friesen; phone conference Raphael; phone conference Pietragallo's office | 201-2 at 20 | 750 |
|---------|-----|-----|----------|------|---------------------------------------------------------------------------------------|-------------|-----|
| Mansour | EPM | 600 | 5/19/2015 | 2.5 | Respond to numerous emails; conference calls with Kevin Raphael and William Pietragallo | 201-2 at 22 | 1500 |
| Mansour | AJC | 600 | 5/20/2015 | 1 | Conference with EPM | 201-2 at 23 | 600 |
| Mansour | EPM | 600 | 6/8/2015 | 1 | Review of latest emails; conference with AJC | 201-2 at 25 | 600 |
| Mansour | EPM | 600 | 6/9/2015 | 1 | Conference with AJC | 201-2 at 26 | 600 |
| Mansour | BPF | 500 | 6/10/2015 | 0.25 | Phone conference with Kevin Raphael | 201-2 at 26 | 125 |
| Mansour | AJC | 600 | 6/10/2015 | 1.5 | Review emails and court entry | 201-2 at 26 | 900 |
| Mansour | AJC | 600 | 6/11/2015 | 1 | Review series of emails from co-counsel; phone conference Rachael's office | 201-2 at 26 | 600 |
| Mansour | EPM | 600 | 6/18/2015 | 1.5 | Conference with AJC; conference with Kevin Raphael; conference with Bill Pietragallo | 201-2 at 28 | 900 |
| Mansour | BPF | 500 | 6/23/2015 | 0.75 | Correspondence with Pietragallo teams | 201-2 at 29 | 375 |
| Mansour | EPM | 600 | 7/6/2015 | 1 | Conference with AJC | 201-2 at 32 | 600 |
| Mansour | EPM | 600 | 7/7/2015 | 1.5 | review of emails; review of proposals | 201-2 at 32 | 900 |
| Mansour | BPF | 500 | 7/14/2015 | 0.4 | Phone conference Kevin Raphael | 201-2 at 34 | 200 |
| Mansour | BPF | 500 | 7/15/2015 | 2 | Prepare for and attend phone conference with Pietragallo and Mansour team | 201-2 at 34 | 1000 |
| Mansour | BPF | 500 | 7/20/2015 | 0.5 | Phone conference Kevin Raphael | 201-2 at 35 | 250 |
| Mansour | EPM | 600 | 7/23/2015 | 4.5 | work on settlement | 201-2 at 36 | 2700 |
| Mansour | EPM | 600 | 7/24/2015 | 2.5 | work on settlement; conference call | 201-2 at 36 | 1500 |
| Mansour | EPM | 600 | 8/5/2015 | 1.5 | work on settlement | 201-2 at 37 | 900 |
| Mansour | EPM | 600 | 8/11/2015 | 3 | continued work on documents | 201-2 at 38 | 1800 |
| Mansour | AJC | 600 | 8/17/2015 | 1.5 | Review series of documents and emails | 201-2 at 39 | 900 |
| Mansour | AJC | 600 | 8/20/2015 | 0.75 | Confer with Mr. Mansour; phone conference Raphael's office | 201-2 at 40 | 450 |
| Mansour | BPF | 500 | 8/24/2015 | 0.5 | Phone conference Kevin Raphael and meeting with AJC | 201-2 at 41 | 250 |
| Mansour | BPF | 500 | 8/26/2015 | 0.75 | Phone conference Kevin Raphael | 201-2 at 41 | 375 |
| Mansour | AJC | 600 | 8/31/2015 | 1 | Meet with Mr. Mansour; review emails and schedule conference call with co-counsel | 201-2 at 42 | 600 |
| Mansour | BPF | 500 | 9/10/2015 | 0.6 | Phone conference with Pietragallo and Mansour teams | 201-2 at 43 | 300 |
| Mansour | AJC | 600 | 9/28/2015 | 1 | Review Westlow and Mr. Pietragallo emails | 201-2 at 46 | 600 |
| Mansour | JME | 600 | 10/1/2015 | 0.5 | Phone conference Barb Marlowe from Perroti's office | 201-2 at 46 | 300 |

| Mansour | BPF | 500 | 10/9/2015 | 3 | Prepare for and attend phone conference with Pietragallo team | 201-2 at 47 | 1500 |
|---|---|---|---|---|---|---|---|
| Mansour | BPF | 500 | 10/12/2015 | 1 | Prepare for and attend phone conference with Pietragallo and Mansour team | 201-2 at 47 | 500 |
| Mansour | JME | 600 | 10/13/2015 | 1.5 | Conference Pat and conference Tony | 201-2 at 47 | 900 |
| Mansour | BPF | 500 | 10/14/2015 | 0.5 | Analyze Bob Mansour; confer with AJC re same and provide to Pietragallo team | 201-2 at 48 | 250 |
| Mansour | EPM | 600 | 10/15/2015 | 2.5 | Conference call; meeting with AJC | 201-2 at 48 | 1500 |
| Mansour | AJC | 600 | 11/11/2015 | 0.5 | Review court entry and Mr. Raphael email | 201-2 at 52 | 300 |
| Mansour | EPM | 600 | 1/20/2016 | 3 | Prepare for meeting in Pittsburgh | 201-2 at 60 | 1800 |
| Mansour | EPM | 600 | 2/2/2016 | 1.5 | Conference with BPF; attend conference call, etc | 201-2 at 62 | 900 |
| Mansour | EPM | 600 | 2/5/2016 | 1.5 | Review of all emails; conference with AJC | 201-2 at 63 | 900 |
| Mansour | EPM | 600 | 2/17/2016 | 1.5 | Review of multiple emails | 201-2 at 64 | 900 |
| Mansour | BPF | 500 | 2/22/2016 | 0.25 | Phone conference Kevin Raphael | 201-2 at 64 | 125 |
| Mansour | EPM | 600 | 2/29/2016 | 0.5 | Review of William Pietragallo's email | 201-2 at 65 | 300 |
| Mansour | BPF | 500 | 3/10/2016 | 0.25 | Phone conference Bob Mansour | 201-2 at 67 | 125 |
| Mansour | BPF | 500 | 3/16/2016 | 1 | Prepare for and attend meeting with Bob Mansour | 201-2 at 68 | 500 |
| Mansour | EPM | 600 | 4/5/2016 | 1 | Review emails and respond to requests | 201-2 at 71 | 600 |
| Mansour | BPF | 500 | 4/21/2016 | 0.25 | Phone conference Kevin Raphael | 201-2 at 74 | 125 |
| Mansour | BPF | 500 | 4/23/2016 | 0.5 | Phone conference Kevin Raphael | 201-2 at 75 | 250 |
| Mansour | BPF | 500 | 4/25/2016 | 0.5 | Confer with Ed Skipton | 201-2 at 76 | 250 |
| Mansour | BPF | 500 | 4/26/2016 | 0.5 | Phone conference Kevin Raphael | 201-2 at 76 | 250 |
| Mansour | EPM | 600 | 5/4/2016 | 1 | Review of latest update | 201-2 at 77 | 600 |
| Mansour | EPM | 600 | 5/10/2016 | 1.5 | Conference call | 201-2 at 78 | 900 |
| Mansour | EPM | 600 | 5/13/2016 | 2 | Review of latest reports | 201-2 at 79 | 1200 |
| Mansour | BPF | 500 | 5/17/2016 | 0.5 | Phone conference Kevin Raphael | 201-2 at 80 | 250 |
| Pietragallo | JSK | 300 | 2/4/2015 | 0.5 | Call with Philadelphia attorneys | 201-1 at 7 | 150 |
| Pietragallo | KER | 675 | 2/9/2015 | 0.7 | Telephone conference with K. McArthur | 201-1 at 14 | 472.5 |
| Pietragallo | EHS | 375 | 2/10/2015 | 0.3 | Teleconference with KER, WP, and Ernie Mansour | 201-1 at 16 | 112.5 |
| Pietragallo | KDM | 675 | 2/27/2015 | 0.2 | Review multiple email messages from Ernie Mansour and Kevin Raphael and Anthony Coyne | 201-1 at 26 | 135 |
| Pietragallo | WP | 725 | 3/10/2015 | 0.5 | Review and assessment of emails; discussion with Kevin Raphael | 201-1 at 30 | 362.5 |
| Pietragallo | KER | 675 | 3/10/2015 | 0.4 | Reviewing correspondence from co-counsel | 201-1 at 30 | 270 |

| Pietragallo | KDM | 675 | 3/12/2015 | 0.1 | Review email messages from Mr. Rahpael and Mr. Pietragallo | 201-1 at 31 | 67.5 |
|---|---|---|---|---|---|---|---|
| Pietragallo | WP | 725 | 3/17/2015 | 0.3 | Conference call with Mansour and Pietragallo lawyers | 201-1 at 34 | 217.5 |
| Pietragallo | WP | 725 | 3/17/2015 | 0.25 | Follow-up discussion with Kevin Raphael | 201-1 at 34 | 181.25 |
| Pietragallo | KER | 675 | 3/24/2015 | 1.5 | meeting with E. Westlow | 201-1 at 40 | 1012.5 |
| Pietragallo | KER | 675 | 4/1/2015 | 0.1 | Telephone call with E. Mansour | 201-1 at 46 | 67.5 |
| Pietragallo | WP | 725 | 4/9/2015 | 0.5 | Review various emails and documents | 201-1 at 53 | 362.5 |
| Pietragallo | KER | 675 | 4/9/2015 | 0.3 | Telephone call with S. Rafferty | 201-1 at 53 | 202.5 |
| Pietragallo | WP | 725 | 4/18/2015 | 0.5 | Review and respond to various emails | 201-1 at 58 | 362.5 |
| Pietragallo | KDM | 675 | 4/25/2015 | 0.1 | Review email messages from E. Westlow | 201-1 at 61 | 67.5 |
| Pietragallo | KDM | 675 | 4/30/2015 | 0.3 | Review email messages from R. Mansour and E. Westlow | 201-1 at 64 | 202.5 |
| Pietragallo | KDM | 675 | 5/7/2015 | 0.1 | Review email message from E. Westlow | 201-1 at 68 | 67.5 |
| Pietragallo | MSR | 725 | 6/11/2015 | 0.8 | Reviewing documents; conferring with KER, WP | 201-1 at 91 | 580 |
| Pietragallo | KER | 675 | 6/15/2015 | 0.3 | Telephone call with A. Coyne | 201-1 at 95 | 202.5 |
| Pietragallo | KER | 675 | 6/15/2015 | 0.2 | Telephone call with E. Mansour | 201-1 at 95 | 135 |
| Pietragallo | KER | 675 | 6/15/2015 | 0.3 | Telephone call with WP | 201-1 at 95 | 202.5 |
| Pietragallo | KER | 675 | 6/16/2015 | 0.3 | Telephone call with F. Barkan | 201-1 at 96 | 202.5 |
| Pietragallo | WP | 725 | 6/17/2015 | 2 | Meeting with Pietragallo and Mansour attorneys | 201-1 at 97 | 1450 |
| Pietragallo | WP | 725 | 6/18/2015 | 0.5 | Dicussions with Tony Coyne; discussion with Kevin Raphael | 201-1 at 99 | 362.5 |
| Pietragallo | KER | 675 | 6/18/2015 | 0.3 | Telephone call with F. Barkan | 201-1 at 99 | 202.5 |
| Pietragallo | MSR | 725 | 6/22/2015 | 0.4 | Reviewing documents; conferring with KER | 201-1 at 103 | 290 |
| Pietragallo | KER | 675 | 6/23/2015 | 0.3 | Telephone call with Brendon Friesen | 201-1 at 105 | 202.5 |
| Pietragallo | WP | 725 | 6/24/2015 | 0.3 | Review email from Kevin Raphael and Ed Westlow; separate discussions with Kevin Raphael | 201-1 at 106 | 217.5 |
| Pietragallo | KER | 675 | 6/24/2015 | 0.1 | telephone call with E. Monsour | 201-1 at 106 | 67.5 |
| Pietragallo | KDM | 675 | 6/26/2015 | 0.4 | Review multiple email messages from Mr. Raphael, E. Skipton, E. Westlow, A. Coyne, and Mr. Pietragallo | 201-1 a 107 | 270 |
| Pietragallo | KER | 675 | 6/26/2015 | 0.4 | Telephone call with B. Friesen and  A. Coyne | 201-1 at 108 | 270 |
| Pietragallo | WP | 725 | 6/30/2015 | 1 | Review and response to multiple emails; prepare for conference call and meeting | 201-1 at 109 | 725 |
| Pietragallo | WP | 725 | 7/1/2015 | 0.5 | Telephone conference with Mansour and Pietragallo lawyers | 201-1 at 110 | 362.5 |

| Pietragallo | KDM | 675 | 7/2/2015 | 0.8 | Review multiple email messages from E. Westlow; review email message from Mr. Raphael; conference with E. Westlow; draft email message to Mr. Raphael; telephone conference with Mr. Raphael; telephone conference with E. Westlow | 201-1 at 111 | 540 |
|---|---|---|---|---|---|---|---|
| Pietragallo | KER | 675 | 7/3/2015 | 0.3 | Telephone call with B. Friesen | 201-1 at 112 | 202.5 |
| Pietragallo | KDM | 675 | 7/6/2015 | 0.3 | Conference with E. Westlow | 201-1 at 112 | 202.5 |
| Pietragallo | EHS | 375 | 7/6/2015 | 1.2 | Team conference call; discussion with KER; call to Ed Westlow with KER | 201-1 at 112 | 450 |
| Pietragallo | KER | 675 | 7/8/2015 | 0.2 | Telephone call with E. Mansour | 201-1 at 114 | 135 |
| Pietragallo | KER | 675 | 7/8/2015 | 0.5 | Telephone call with E. Westlow | 201-1 at 115 | 337.5 |
| Pietragallo | KER | 675 | 7/13/2015 | 0.4 | Telephone call with A. Coyne | 201-1 at 118 | 270 |
| Pietragallo | KER | 675 | 7/14/2015 | 0.2 | Telephone call with B. Friesen | 201-1 at 118 | 135 |
| Pietragallo | KER | 675 | 7/14/2015 | 0.3 | Telephone call with T. Coyne | 201-1 at 118 | 202.5 |
| Pietragallo | KER | 675 | 7/20/2015 | 1.5 | meeting with R. Zayas | 201-1 at 122 | 1012.5 |
| Pietragallo | KER | 675 | 7/20/2015 | 0.5 | preparing for meeting with R. Zayas | 201-1 at 122 | 337.5 |
| Pietragallo | KER | 675 | 7/22/2015 | 0.3 | Telephone call with R. Zayas | 201-1 at 123 | 202.5 |
| Pietragallo | WP | 725 | 7/27/2015 | 0.5 | Review of multiple emails from Kevin Raphael, Ernie Mansour, Tony Coyne, and Ed Westlow. | 201-1 at 127 | 362.5 |
| Pietragallo | WP | 725 | 7/27/2015 | 0.25 | Telephone conference with Ernie Mansour and Tony Coyne | 201-1 at 127 | 181.25 |
| Pietragallo | KER | 675 | 7/28/2015 | 0.6 | Telephone call with E. Mansour | 201-1 at 129 | 405 |
| Pietragallo | KER | 675 | 7/28/2015 | 0.4 | Telephone call with R. Zayas | 201-1 at 129 | 270 |
| Pietragallo | KDM | 675 | 7/29/2015 | 0.1 | Review email message from E. Westlow | 201-1 at 129 | 67.5 |
| Pietragallo | WP | 725 | 7/30/2015 | 1 | Follow-up conversations with Tony Coyne and Kevin Raphael | 201-1 at 130 | 725 |
| Pietragallo | MSR | 725 | 7/31/2015 | 0.6 | Conferring with co-counsel; reviewing dcouments | 201-1 at 131 | 435 |
| Pietragallo | WP | 725 | 8/5/2015 | 0.25 | Telephone discussion with Ernie Mansour | 201-1 at 132 | 181.25 |
| Pietragallo | KER | 675 | 8/14/2015 | 0.4 | Telephone call with B. Friesen | 201-1 at 135 | 270 |
| Pietragallo | WP | 725 | 8/19/2015 | 0.5 | Review of various emails; telephone discussions with Kevin Raphael | 201-1 at 138 | 362.5 |
| Pietragallo | KER | 675 | 8/19/2015 | 0.4 | telephone call with R. Zayas | 201-1 at 138 | 270 |
| Pietragallo | KER | 675 | 8/24/2015 | 0.4 | Conference call with B. Friesen and A. Coyne | 201-1 at 140 | 270 |
| Pietragallo | KER | 675 | 8/24/2015 | 0.7 | Preparing for calls | 201-1 at 140 | 472.5 |
| Pietragallo | KER | 675 | 8/28/2015 | 0.2 | Telephone call with T. Coyne and B. Friesen | 201-1 at 142 | 135 |

5

| Pietragallo | KER | 675 | 9/1/2015 | 0.4 | Telephone call with A. Coyne | 201-1 at 144 | 270 |
|---|---|---|---|---|---|---|---|
| Pietragallo | KER | 675 | 9/8/2015 | 0.5 | Telephone call with K. Dougherty | 201-1 at 148 | 337.5 |
| Pietragallo | KER | 675 | 9/9/2015 | 0.3 | Telephone call with R. Zayas | 201-1 at 149 | 202.5 |
| Pietragallo | KER | 675 | 9/10/2015 | 0.5 | Telephone call with L. Schultz | 201-1 at 150 | 337.5 |
| Pietragallo | KER | 675 | 9/10/2015 | 0.9 | Telephone call with R. Zayas | 201-1 at 150 | 607.5 |
| Pietragallo | KER | 675 | 9/15/2015 | 0.3 | Telephone call with F. Barkan | 201-1 at 153 | 202.5 |
| Pietragallo | KER | 675 | 9/18/2015 | 0.4 | Telephone call with A. Coyne and W. Pietragallo | 201-1 at 155 | 270 |
| Pietragallo | KER | 675 | 9/23/2015 | 0.3 | Conferring with WPII | 201-1 at 158 | 202.5 |
| Pietragallo | KER | 675 | 9/30/2015 | 0.3 | Telephone call with L. Schultz | 201-1 at 161 | 202.5 |
| Pietragallo | KER | 675 | 10/1/2015 | 0.4 | Telephone call with L. Schultz | 201-1 at 161 | 270 |
| Pietragallo | MSR | 725 | 10/2/2015 | 0.8 | reviewing documents; conferring with WP, EHS | 201-1 at 162 | 580 |
| Pietragallo | MSR | 725 | 10/5/2015 | 0.7 | Conferring with WP; reviewing documents | 201-1 at 162 | 507.5 |
| Pietragallo | KER | 675 | 10/7/2015 | 0.2 | Telephone call with B. Friesen | 201-1 at 163 | 135 |
| Pietragallo | KER | 675 | 10/7/2015 | 0.2 | Telephone call with R. Zayas | 201-1 at 163 | 135 |
| Pietragallo | KER | 675 | 10/9/2015 | 0.2 | Preparing for call | 201-1 at 166 | 135 |
| Pietragallo | MSR | 725 | 10/9/2015 | 0.4 | Reviewing documents | 201-1 at 166 | 290 |
| Pietragallo | MSR | 725 | 10/31/2015 | 0.6 | Conferring with KER | 201-1 at 178 | 435 |
| Pietragallo | KER | 675 | 10/16/2015 | 0.3 | Telephone call with A. Coyne | 201-1 at 170 | 202.5 |
| Pietragallo | WP | 725 | 11/2/2015 | 0.1 | Follow-up discussion with Kevin Raphael | 201-1 at 178 | 72.5 |
| Pietragallo | KER | 675 | 11/9/2015 | 0.3 | Telephone call with B. Friesen and T. Coyne | 201-1 at 180 | 202.5 |
| Pietragallo | KER | 675 | 12/2/2015 | 0.3 | Telephone call with A. Coyne | 201-1 at 186 | 202.5 |
| Pietragallo | KER | 675 | 12/28/2015 | 0.8 | reviewing documents | 201-1 at 191 | 540 |
| Pietragallo | KER | 675 | 1/6/2016 | 0.3 | Reviewing email from B. Friesen; drafting response to same | 201-1 at 192 | 202.5 |
| Pietragallo | EHS | 375 | 1/12/2016 | 0.2 | Call with KER to Mansour Gavin | 201-1 at 194 | 75 |
| Pietragallo | KER | 675 | 1/14/2016 | 0.3 | Telephone call with F. Barkan | 201-1 at 194 | 202.5 |
| Pietragallo | KER | 675 | 1/15/2016 | 0.6 | Telephone call with B. Friesen | 201-1 at 194 | 405 |
| Pietragallo | KER | 675 | 1/18/2016 | 0.7 | Preparing for team meeting | 201-1 at 195 | 472.5 |
| Pietragallo | KER | 675 | 1/18/2016 | 0.4 | Telephone call with B. Friesen | 201-1 at 195 | 270 |
| Pietragallo | KER | 675 | 1/22/2016 | 0.3 | Telephone call with L. Schultz | 201-1 at 198 | 202.5 |
| Pietragallo | KER | 675 | 1/22/2016 | 0.4 | Telephone call with L. Schultz | 201-1 at 198 | 270 |
| Pietragallo | KER | 675 | 1/22/2016 | 0.3 | Telephone call with team | 201-1 at 198 | 202.5 |
| Pietragallo | KER | 675 | 1/25/2016 | 1.2 | Telephone call with A. Coyne and B. Friesen | 201-1 at 198 | 810 |
| Pietragallo | KER | 675 | 1/26/2016 | 0.4 | Preparing for call tomorrow | 201-1 at 198 | 270 |
| Pietragallo | KER | 675 | 1/29/2016 | 0.3 | Conferring with EHS | 201-1 at 199 | 202.5 |

| Pietragallo | KER | 675 | 2/1/2016 | 1.2 | Telephone call with B. Friesen; drafting email re: same; telephone call with WP re: same | 201-1 at 200 | 810 |
|---|---|---|---|---|---|---|---|
| Pietragallo | KER | 675 | 2/2/2016 | 0.2 | Telephone call with F. Barkan | 201-1 at 201 | 135 |
| Pietragallo | KER | 675 | 2/8/2016 | 0.2 | Telephone call with B. Friesen | 201-1 at 202 | 135 |
| Pietragallo | KER | 675 | 2/22/2016 | 0.3 | Telephone call with B. Friesen | 201-1 at 204 | 202.5 |
| Pietragallo | KER | 675 | 2/28/2016 | 0.4 | reviewing email from | 201-1 at 205 | 270 |
| Pietragallo | KER | 675 | 3/14/2016 | 0.3 | Telephone call with B. Friesen | 201-1 at 210 | 202.5 |
| Pietragallo | KER | 675 | 3/15/2016 | 0.4 | Telephone call with B. Friesen | 201-1 at 211 | 270 |
| Pietragallo | KER | 675 | 3/23/2016 | 0.4 | Telephone call with A. Coyne and B. Friesen | 201-1 at 214 | 270 |
| Pietragallo | KER | 675 | 3/28/2016 | 1.1 | Preparing for conference call | 201-1 at 216 | 742.5 |
| Pietragallo | KER | 675 | 3/30/2016 | 0.3 | Telephone call with B. Friesen | 201-1 at 216 | 202.5 |
| Pietragallo | KER | 675 | 3/30/2016 | 0.3 | Telephone call with E. Mansour | 201-1 at 216 | 202.5 |
| Pietragallo | KER | 675 | 4/23/2016 | 1.3 | Telephone call with B. Friesen; telephone call with WPII | 201-1 at 226 | 877.5 |
| Pietragallo | MSR | 725 | 4/25/2016 | 0.3 | Reviewing documents | 201-1 at 227 | 217.5 |
| Pietragallo | EHS | 375 | 4/26/2016 | 0.9 | Call with Brendon F. and Kevin R. to Jeff Weinstein | 201-1 at 228 | 337.5 |
| Pietragallo | KER | 675 | 5/2/2016 | 0.4 | Telephone call with Anthony Coyne | 201-1 at 232 | 270 |
| Pietragallo | KER | 675 | 5/11/2016 | 0.3 | Telephone call with R. Zayas | 201-1 at 236 | 202.5 |
| Pietragallo | KER | 675 | 5/14/2016 | 0.2 | Telephone call with A. Coyne | 201-1 at 239 | 135 |
| Pietragallo | MSR | 725 | 5/19/2016 | 0.6 | Conferring with KER | 201-1 at 242 | 435 |
| Pietragallo | KER | 675 | 5/25/2016 | 0.2 | Telephone call with M. Boni | 201-1 at 246 | 135 |
| Pietragallo | KER | 675 | 5/26/2016 | 0.5 | Conference call with WP, B. Friesen, E. Westlow, and EHS | 201-1 at 248 | 337.5 |
| Westlow | EJW | 600 | 2/10/2015 | 0.5 | Telephone and e-mail correspondence with KDM | 201-3 at 4 | 300 |
| Westlow | EJW | 600 | 2/20/2015 | 0.25 | E-mail exchange with KDM | 201-3 at 4 | 150 |
| Westlow | EJW | 600 | 5/17/2015 | 0.25 | Review and respond to e-mail messages from Mr. Raphael and Mr. Skipton | 201-3 at 8 | 150 |
| Westlow | EJW | 600 | 10/13/2015 | 0.2 | E-mail communication to the group re: EJW back in office | 201-3 at 24 | 120 |
| Westlow | EJW | 600 | 1/12/2016 | 0.1 | Review e-mail correspondence from Mr. Mansour | 201-3 at 29 | 60 |

157

95811.3