IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| UNITED STATES, | : | |
| *ex rel.* DONALD PALMER, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 12-907 |
| C & D TECHNOLOGIES, INC., | : | |
| Defendant. | : | |

**MEMORANDUM**

PRATTER, J.                                                                                   APRIL 25, 2017

**INTRODUCTION**

The devil often lurks in the details of lawyers' billing records. It is a hellish judicial duty to review and resolve disputed attorneys' fee petitions, particularly in cases, like this one, where the adversaries fan the flames at virtually every opportunity. To listen to the combatants, the Court is being asked, according to one side, to acknowledge, with considerable recompense, long-suffering avenging angels, or, on the other hand, to once and for all quell avariciousness and inefficiency and only give the devil what is reasonably due.[1] It is surely no surprise that determining what is "reasonably due" leads to this Memorandum.

**BACKGROUND**

In this False Claims Act action, Donald Palmer claimed that C&D Technologies manufactured and shipped some 349 defective batteries to the United States government for use in ICBM missile launch controls. Following a criminal investigation that had been instigated, at

---

[1] The earliest known documented use of the popular modern proverb "The devil is in the details" appears to be in the Times (London) (July 9, 1969), with the clever twist on either French novelist Gustave Flaubert's observation that "Le bon Dieu est dans le detail" or German art historian Aby Warburg's papers which contain the comment "Der liebe Gott steckt in Detail." The notion of "giving the devil his due" dates back many centuries earlier, perhaps, according to The Oxford Dictionary of Proverbs, to John Lyly's Pap with Hatchet (1589).

1

least in part, as a result of Mr. Palmer's claims, the government closed the investigation, electing to take no action against C&D.

Mr. Palmer was a Senior Design and Development Engineer for C&D from 2007 through 2011. He claimed that the batteries manufactured per C&D's government contract were not manufactured to specifications. In particular, Mr. Palmer claimed that C&D failed to use the proper grit material and pressure in preparing and sealing the covers and jars of the batteries. Initially, Mr. Palmer also claimed that he was fired from his job in retaliation for reporting the manufacturing problems to senior C&D management, but he withdrew that claim when he was confronted with the fact that he had released all of his employment claims in exchange for a severance package.

Mr. Palmer did initiate this Qui Tam litigation, however. Consistent with the ultimate results of the criminal investigation, the government declined to intervene in this case.[2]

After some four years of litigation, the parties at first appeared to accept finally the Court's encouragement to engage in active mediation activities in the summer of 2014. Mr. Palmer, the Relator, then demanded a settlement of $1.5 million, plus fees and costs. The 2014 negotiations were unsuccessful. During those discussions, C&D reportedly advised Mr. Palmer's attorneys of C&D precarious financial condition, including sharing with them a C&D financial statement.

Some months later, in the spring of 2015, Mr. Palmer filed a Second Amended Complaint in which he expanded his demands for alleged damages to some $30,000,000. Summary judgment motion practice then ensued, culminating in the Court's denial of the cross motions. Ultimately, the parties settled the case for $1.7 million, representing about 6% of the total

---

[2] Relator's counsel presumes to know government's counsel's thinking about the government's view about the case, suggesting that if the government thought it was without merit it would have moved for the case to be dismissed. The Court is unfamiliar with any basis for counsel's surmise.

amount demanded in Mr. Palmer's Second Amended Complaint.[3] As a statutorily technical matter, the settlement makes Mr. Palmer a "prevailing party", arguably entitling him to an award of fees and costs under the False Claims Act.[4]

Although the parties supposedly settled the substance of the case, they have been unable to reach an agreement on fees. The parties initially submitted their position papers on the fees issues to the Court in January 2016. At that time, Mr. Palmer's counsel sought $2,367,904.85 in attorneys' fees as of December 31, 2015.[5] C&D responded that the reasonable fee amount should have been no more than about half that amount, arguing essentially that the case had been over-staffed and over-worked by the Relator's various sets of lawyers, and that the fee petition was based on the wrong hourly rates and included duplicative entries, inappropriate submissions such as for travel time and, finally, that there should be a reduction of the amount awarded for degree of success, or rather, lack of success, given the modest settlement amount.

The Court repeatedly offered certain guidance for possibly bridging the chasm and directed the parties' counsel to exchange various pertinent information in an effort to minimize areas of disagreement. Counsel were equally slow to do so, and the hoped for exercise that the Court intended as a way to persuade counsel of the benefits of good faith and good sense achieved very little – other than to lead to an exchange dueling briefs, innuendo and insults.

---

[3] Despite settling, C&D has not paid the settlement amount called for in the settlement agreement. Mr. Palmer has moved to enforce the settlement agreement. See Motion at Doc. No. 127. C&D's protestations concerning that motion all revolve around its allegedly impecunious status.

[4] "If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds. Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant." 31 U.S.C.A. § 3730 (emphasis added).

[5] The parties have agreed on $164,585.49 for costs and expenses. Cost and expenses are not at issue and are not addressed here.

Mr. Palmer's lawyers appear to believe that the key to resolving this dispute is to *increase* their fee demand. They now want $3,278,115.99 in fees, almost $1 million *more* than the fees they sought a year ago and almost twice the dollar amount of the settlement they reached. They now choose to use higher hourly rates than they originally used to calculate their fee demand, rates that they have somehow and for some reason "extrapolated" from actual Community Legal Services hourly rates. For their part, the lawyers for C&D oppose the fee demand, unhelpfully describing their opponents as "disingenuous", "opportunistic" and looking to "recover . . . a boon of attorneys' fees" that they describe as "exorbitant" and having been based on "hours amassed" and supported by "regurgitated", "biased", and "self-serving" opinions.

As a result, counsel seemingly overlook the fact that the Court was at all times well aware of who was doing what, to what possible end and has been entirely attentive to the at times puzzling performance of the professional duties of the lawyers. The discussion that follows reflects the Court's hands-on contemporaneous evaluation (and necessary attendant factual findings) of the services performed and for which payment is sought. The parties have declined the Court's encouragement to navigate their own ships through the fee swells.[6] The Court will do so for them, lest one or both of them find themselves and their clients wrecked upon the rocky shoals without even a paddle.

## DISCUSSION

I. Applicable Legal Standard

The False Claims Act provides that a successful relator "shall…receive reasonable attorneys' fees and costs." 31 U.S.C. § 3730 (d)(2). "Fees are presumed reasonable when

---

[6] In the main, after clearing out the hyperbole, C&D's opposition to the fee petition adopts most of the Court's guidance as to, for lack of a better term, "lawyer hours" and acceptable rates for various tasks undertaken.

calculated using the 'lodestar' method, by which a court assigns a reasonable hourly rate and multiplies that rate by a reasonable number of hours on the litigation." Simring v. Rutgers, 634 Fed. App'x. 853, 857 (3d Cir. 2015). Here, although he endeavors to place the ultimate burden on C&D to undermine the fee application, Mr. Palmer (as the nominal champion of his lawyers, who are, obviously, the interested parties on this issue) bears the burden of establishing the reasonableness of the rate(s) claimed and the hours allegedly logged and claimed. Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 178-80 (3d Cir 2001).

To determine the reasonable hourly rate(s), the Court most typically looks to the prevailing rate charged by lawyers in the community where the matter is being litigated and professional services performed, considering lawyers of equivalent experience, proficiency and reputation. Simring, 634 Fed. App'x. at 857. (As will be addressed below, even this rather rudimentary proposition is a subject of dispute in this case.) Then, to find a reasonable number of hours, not unexpectedly, the initial benchmark would be the number of hours actually devoted to the subject activity.

But, for good or ill, the Court's job is far more challenging than to be a disengaged robotic calculator, because, while the Court cannot sua sponte reduce the fees being sought, the Court may indeed respond to meritorious objections to exclude hours that are not reasonably spent on the alleged activity, such as hours that are excessive, redundant or otherwise unnecessary. Simring, 634 Fed. App'x. at 857. See also Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 713 (3d Cir. 2005). To discharge its duties, the Court must conduct a "thorough and searching analysis." Zebroski v. Gouak, Civil Action No. 09-1857, 2011 WL 3565223, at *2 (E.D. Pa. Aug. 12, 2011). Of course, while these duties fall within the Court's broad but sound discretion, the exercise of that discretion should be well within conventional

guideposts. See, e.g., Boles v. Wal-Mart Stores, 650 Fed. App'x. 125 (3d Cir. 2016). The Court has endeavored to do just that here, giving due regard to the exhibits proffered by C&D, the affidavits submitted by Relator and the Court's firsthand knowledge of the case.

Based on the Court's detailed efforts to persuade these parties and counsel to reach an amicable resolution of this fee dispute, it should come, once again, as no surprise to them that the Court's primary guideposts, with varying comparative primacy (depending upon the specific matter being examined), are the following:

- For which tasks is compensation merited? And which not?
- As performed by how many and which lawyers?
- For how much time?
- At what hourly or other rate?
- To what meaningful (or not) end?

To be sure, as would be true for many judges, and not inconsistent with long-standing - - or, at least, familiar - - practice, the analysis and results that follow below reflect the Court's having tested the reasonableness of the requested fees, in part, by measuring it against what Mr. Palmer's counsel stated was their total "lodestar" of $3,278,115.99. See also Manual for Complex Litigation (Fourth) § 14.122 (2004) ("the lodestar is…useful as a cross-check on the percentage method" of determining reasonable attorneys' fees); Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002) ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award.").

As already stated, a lodestar is properly calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. See Blum v. Stenson, 465 U.S. 886, 889 (1984). The Supreme Court instructed that "[r]easonable fees…are to be

calculated according to the prevailing rates in the relevant community." Id. at 895. "[T]he rate that private counsel actually charges for her services, while not conclusive, is a reliable indicum of market value." United States v. One Star Class Sloop Sailboat built in 1930 with hull no. 721, named "Flash II", 546 F.3d 26, 40 (1st Cir. 2008) (emphasis supplied).[7] In this case, oddly, given the fact that the fee requested eclipses the settlement amount by being double the amount of settlement, the lodestar's usefulness may be found in its use for exactly opposite typical application: Mr. Palmer's counsel would arithmetically have to admit that the requested fee involves a multiplier of two times the settlement achieved. This is an unusual fee application formula to be sure.

In addition to the foregoing general legal standard, because calculating the product of "reasonable hours times a reasonable rate does not end the inquiry," Hensley v. Eckerhart, 461 U.S. 424, 434 (1983), the Court's obligations include other, more mundane searches for possible risks of duplicative work, unnecessary work, erroneous or untimely work, and the like, however inadvertent such circumstances might have been.

In short, while the False Claims Act pursuant to which this litigation was brought is a compulsory fee-shifting statute, and the Court is not charged with wielding the same sharp pencil that it might in a class action setting, for example, where the proceeds available to class members rise and fall with the rising or falling amount of class counsel's fees, the Court will nonetheless limit the final fee award based upon conclusions drawn from the facts and circumstances presented here, within the confines of the objections raised, case law pertinent to the fee items as to which objections have been raised, and given the Court's practiced eye of much of the work product at issue.

---

[7] The First Circuit cited a common fund case, In Re Cont'l III Sec. Litig., 962 F.2d 566, 568 (7th Cir. 1992), for this proposition.

Accordingly, the Court turns to the challenges raised by C&D to fees sought by Mr. Palmer's various lawyers. In general, C&D argues that Mr. Palmer's lawyers are using unreasonable hourly rates and then compounding the problem by toting up an unreasonable number of hours for depositions, document review, seeking and opposing summary judgment, litigating a Daubert challenge, addressing motions in limine, and charging for travel time as well as Mr. Begelman's (in particular) duplicative work, topped off by what C&D attacks as the failure of Mr. Palmer's lawyers to accomplish any benefit for their effort.

II.     Hourly Rates

As is common in such matters, both parties here appear to accept that the rate issue is best resolved by using primarily - - if not exclusively - - the rates promulgated by the Philadelphia office of Community Legal Services. Maldonado v. Houstown, 256 F.3d 181, 187-188 (3d Cir. 2001). If that was all that was necessary, this would be an easy task. It is not. Here, the Relator's counsel not only argues against merely using the published CLS rates in place at the time the alleged services by the Palmer lawyers were performed (the position - - and rates - - Relator's counsel used at the time of their initial fee petition), but counsel goes so far as to say that they should not even be limited to the higher CLS rates actually in effect at the time of the fee petition.[8] This, of course, is still the position of C&D and virtually all of the case law on the point.[9] Rather, Mr. Palmer's lawyers say the Court should use what amount to "virtual CLS rates" that Relator's counsel have "extrapolated" from the actual CLS rates in effect.

---

[8] Relator's counsel would have to admit that in their initial fee petition papers they did accept "unedited" CLS rates, not rates that were increased.

[9] Even the cases cited by the Relator support this view; none of them involve rate "extrapolation." See, e.g., Keenan v. City of Philadelphia, 983 F.2d 459, 476 (3d Cir. 1992) (providing two methods of compensating for delay in payment, including basing the fee award on current rates); Bolden v. Southeastern Pa. Transportation Auth., 897 F. Supp. 188 (E.D. Pa. 1995) (applying current rate for fee award).

8

The Court will not follow the Relator's lawyers into the nether world of "extrapolating" CLS rates.  The Court finds that the CLS rates promulgated in 2014 remain the actual current rates; neither CLS nor any court in any reported opinions that this Court has been able to locate have resorted to the "extrapolation" technique now used by Mr. Palmer's counsel.  Therefore, although the Court would have been prepared to adhere to analysis of a fee petition where rates paid for claimed hours were such rates as were in effect at the time the specific items of work were actually performed, the Court recognizes that the case law has taken a more indulgent tack.  So be it.  Mr. Palmer's lawyers' fee application will be adjusted so that only the published 2014 CLS rates may be used.  There will be no "extrapolating" permitted.

In terms of the specific dollar amount to be used from the range of current CLS rates, the Court elects to take an equitable approach (thereby hopefully eschewing imposition of either sacrifice or premium) and directs counsel to use for each time-keeper for whom a fee is sought and permitted an hourly rate at the mid-point of the applicable range.  For example, as for Mr. Begelman, the current CLS rate range is $600-$650 per hour, so for all of Mr. Begelman's time which will be allowed, as further permitted by the reasoning set forth in this Memorandum, the hourly rate to be used is $625.00, the mid-way point between the low and high points of the range.  The Court trusts the intent on this point is clear.

III.    Reasonableness of Hours Claimed[10]

---

[10] Certain observations about hourly billing generally and as used in this case ought to be made at the outset.  According to the 2017 Report on the State of the Legal Market, released by Georgetown Law's Center for the Study of the Legal Profession and Thomson Reuters Legal Executive Institute, https://www.law.georgetown.edu/news/press-releases/legal-market-report-2017.cfm, because of budgets and caps imposed by clients, perhaps as much as 80 to 90 percent of contemporary law firm work is done outside of the traditional billable hour model.  This suggests the demise of the billable hour in the face of clients demanding efficiency, expecting outsourcing, and limiting use of both new associates and the most senior lawyers.  In short, in this century the focus in the marketplace may be to highlight and pay for profitability, not hours.  If the marketplace is moving in such a direction, it at least behooves the Court to be aware of the realities in the profession.  There is no requirement that court-approved fees be the last

A. Depositions

During the Court's various meetings about the fee disputes, the Court frequently addressed the matter of the crowd of counsel at the depositions and in preparation sessions for them. The Court is certainly not embracing C&D's inflammatory language in describing the Relator's lawyers' number of hours for which fees are sought as "obscene."[11] However, Relator's counsel has shown quite little regard for the Court's prior express guidance on the issue of claiming fees for time devoted to depositions. Having read the parties' various submissions and explanations for the events and efforts, the Court has found no compelling reason to re-evaluate the previous approach of the Court on this point. Mr. Palmer's lawyers will be permitted to claim for lawyer time for the specifically challenged depositions, namely, Robinson, Haton, the 30(b)(6) deposition, Silence, Toll, Shillinger, Heimer, Capps, Smith, Groeger, Bahr, and Poleskey (at the rates in accordance with the foregoing discussion) for the Palmer lawyer who actually did the questioning and one other Palmer lawyer actually in attendance.[12] "Prep time" compensation for the foregoing listed depositions is permitted for one lawyer who actually logged preparation time for the deposition, up to a maximum of 1.75 prep hours per hour of documented deposition time. If less than 1.75 hours/deposition hour was recorded, then the

---

bastion of the hourly rate. The judiciary ought to prepare itself to embrace and apply means, methods, and mores other than those appearing in Jurassic Park.

And, speaking of realities, in this litigation, it should not go unnoted that there necessarily were inherent inefficiencies in the Relator's camp prompted by bringing in new lead counsel in November 2013, while retaining in active service prior counsel as co-counsel. The troop grew in other words; no one departed.

[11] If anything, such language is most unhelpful, not to mention entirely subjective. The Court reminds counsel that the goal here is to assess a number of hours that is not <u>objectively</u> unreasonable.

[12] If there were more than two Palmer lawyers in attendance, the petition may be for the lawyer who conducted the questioning and one other lawyer who shall have been either the lawyer who actually did the primary preparation work for the deposition or, if that person is not in attendance or is the questioner, then the other lawyer whose time may be charged for being at the deposition may be the most senior lawyer who actually has theretofore been working on the case in a meaningful way. Relator has failed to meet his burden to explain why any other lawyer's deposition-related time was used for any purpose.

lesser time value must be used. For example, for a 2-hour deposition, up to 3.5 hours of prep time may be charged or the actual prep time logged, whichever is less. Relator has failed to demonstrate why any greater amount of preparation time should be allowed.

B. Document Review

As described, Relator's counsel's approach to document production and review seems at odds with contemporary techniques, not to mention with an interest in efficiency and economies. See, e.g., fn 10, supra. Relator's counsel gives no compelling explanation as to why so many people were involved in the process, why electronic means for searching were not used, why "cast-the-widest-possible-net" was the proper approach and what efforts were made but rejected (and why) to expedite and economize this task through other means. In the marketplace, consumers or evaluators of legal services are no fools and, quite simply, are not interested in providing a trough where herds of lawyers try to muscle their way to the front to quench their thirst without explanation and with no appreciation of moderation.

In this case's present posture, the Court does not presume to tell counsel or litigants what discovery tools they must use. However, counsel and litigants ought not presume that their opponents are their no-holds-barred bankers for whatever disproportionate and/or full employment discovery is pursued. Again, with an effort to be equitable, and to avoid the inherent risk of unfairness of hindsight second-guessing, particularly so long after the fact, even though Relator has not explained in any detail why the number of hours claimed were claimed or could be considered to be reasonably necessary, the Court will allow Mr. Palmer's counsel to claim document review time for up to 185 hours allocated among two paralegals and three lawyers who actually engaged in the review work, with application being made as follows: twenty-five (25) hours of lawyer time for setting the guidelines for the substantive review, one

hundred ten (110) paralegal hours for doing the hands-on review and culling, and then up to fifty (50) hours of lawyer time for sampling/reviewing the results of the paralegals' services.

    C.  Summary Judgment

The parties' volley of summary judgment motions was destined to end in two unsuccessful motions. The Court repeatedly signaled as much throughout the life of the case by informally expressing mild incredulity whenever the lawyers would resort to the familiar summary judgment saw ("Judge, we see this case as an unusually strong one for summary judgment for our client…"). Nonetheless, both sides persisted. They were entitled to try. Once again, the Court will not second guess counsel, or their consultations with their clients, as to the possible purpose or value of such exercises. But nor will the Court indulge those choices as being without cost.

C&D's counsel is not shy about questioning why lawyers who hold themselves out as experts in the specific legal fields at issue in this case would need to log so many hours on supposedly familiar issues. It may well be hard not to question whether inexperienced lawyers were "going to school" on this case or that experienced lawyers were not imposing on their time sheets the benefits of all their knowledge, in which case perhaps the rate issues for all the involved lawyers ought to be revisited. Or perhaps the wisdom of a plaintiffs' summary judgment motion ought to be questioned more closely. The Court cannot avoid observing that the number of hours attributed to the Relator's own motion (284.15) comes within a day's worth of the number of hours counsel then charged for defending against the C&D opposing motion (291.20). Even though both addressed legal issues presented in the same case, the Court does not think they necessarily should be fully equated (and, hence, not every hour logged is expected to serve "double duty"), particularly given that the defense motion did in fact raise some thorny,

challenging issues that may have given Relator's counsel pause.  Nonetheless, one would reasonably expect that at least a good portion of the work undertaken to plow the legal field for advancing a summary judgment motion would be (or at least should be) useful and usable for defending an opposing motion (or vice versa), especially for lawyers (such as those representing Relator here) with a self-proclaimed expertise in the controlling legal issues.  Thus, exercising its knowledge of the issues and the briefs as well as having discretion to apply its knowledge gleaned from managing the case from start to finish, the Court will permit a claim of 60% of the current claim for the written work recorded for Relator's motion, 50% of the time charged for opposing the C&D summary judgment motion, and 30% of the time recorded for the Relator's "Reply Brief."  The Court concludes that it is reasonable to apply these percentages as to each of the time-recorders/time-keepers who allotted time for these activities.  In other words, if Lawyer A recorded 75.15 hours for work on the Relator's motion, Lawyer B recorded 120 hours, and Lawyer C 89 hours, the Court will permit use of 45.09 hours for Lawyer A, 72 hours for Lawyer B, and 53.4 hours for Lawyer C.  If Lawyer A initially recorded 150 hours for opposing C&D's Motion, Lawyer D recorded 50.2, and Lawyer E 91 hours, then pursuant to this ruling Lawyer A is permitted to claim for 75 hours, Lawyer D 25.1 hours, and Lawyer E 45.5. hours, etc.

    For the 2.5 hour oral argument on the summary judgment motions, the Court is puzzled as to how Relator's counsel can call for compensation for 121.2 hours for this activity, slightly more than 48 times the length of the entire time in court for both parties' arguments, including pleasantries.  It would not be unreasonable for a lawyer – even one who is not a self-described expert in the field – to devote 20 hours to prepare for, and another 2.5 for oral argument.  To assist in preparation for the oral argument, the Court will permit Relator's counsel to also claim up to 20 hours of preparation time for the services of a junior lawyer, one presumably

knowledgeable about the case, in case the lawyers engaged in a mock argument or similar preparatory activity.

Motions for reconsideration are rarely successful; moreover, there are very strict limits as to permitted grounds for such motions. They are not to be used for second bites at the apple.[13] This should make them relatively easy to respond to. Supposedly, Relator's counsel devoted some 77.85 hours to addressing the 5-page motion for reconsideration that C&D filed. There is no credible description as to why. Allowing for a laudatory level of professionalism to be devoted to making sure C&D's reconsideration motion did not become one of the rarest of breeds, that is, a successful reconsideration motion, the Court is confident Relator's counsel could and should have been able to do so within an indulgent 25 hours, again allocated equitably across the board of lawyers who actually recorded time for this activity.

D. *Daubert* Motions

The dueling *Daubert* motions were no more successful than the summary judgment motions. The Relator filed one; C&D filed two. The *Daubert* legal landscape hardly encourages an expectation of success in curtailing, much less culling, expert witnesses. That reality did not dampen the Relator's counsel's enthusiasm for logging *Daubert*-related time. The Relator's counsel has not persuaded the Court that C&D's challenges to the fees attributed to the *Daubert* activities are not valid. Therefore, the $58,106.56 reduction for this category of charges proposed by C&D shall be adopted, modified only as necessary given the Court's ruling on hourly rates.

E. Motions *in Limine*

Relator's three *in limine* motions reportedly required almost 100 hours. C&D estimates less than a third of that was actually necessary. Other than the demonstrated penchant of

---
[13] See fn 1, supra.

14

Relator's counsel to generously attribute time to this case, the Court sees no particular basis for challenging this category, and, as a result, will leave it temporarily unmodified, pending a submission which will show the recalculated category based on other aspects of this Memorandum, such as the proper rate to use.

F. "Duplicative, Indecipherable and Unwarranted Charges"

The Court has reviewed the C&D objections and exhibits (as it has for all of the challenges) and proposed reductions embodied in C&D's Exhibit S. While there are several relatively small line items that may raise questions, the Court is satisfied that the primary revisions being ordered by the Court, supra and infra, are sufficient, making these particular objections appear to be closer to "nit-picking" than would merit closer examination. In any case, the Court declines to sustain those objections. The claimed fees in this category may remain, again recalculated at the proper permitted rate.

G. Travel Time

The same will not be said, however, of the claim for travel time.

Charging professional time for lawyers' travel (as opposed to some negotiated lower rate or even merely allowing for recovery of only documented out-of-pocket expenses for an agreed upon lawyer) understandably has raised the ire of clients, third party payors, and courts alike. Certainly, the Court expected – and appreciated – the courtesy of one lawyer representative to attend court-scheduled events. However, the Third Circuit Court of Appeals has held that "'under normal circumstances, a party that hires counsel from outside of the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel.'" See Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 311 (3d Cir. 2008) (quoting Interfaith Community Org. v. Honeywell, 426 F.3d 694, 710 (3d Cir. 2005)). This is so unless

15

counsel seeking fees can show that "forum counsel are unwilling to represent plaintiff." Id. Relator's counsel here has made no such showing, and given the size and relative sophistication of the Philadelphia legal community, would have an exceedingly difficult time doing so. Thus, to the extent that Relator's out-of-forum counsel seek reimbursement for travel time to and from the forum – for instance, for court appearances – that travel time will not be reimbursed. See Hahneman Univ. Hosp., 514 F.3d at 311 (rejecting claim for travel time for out-of-forum counsel in the absence of any showing that forum counsel were unwilling to represent plaintiff); Mangino V. Pa. Turnpike Com'n, Civil Action No. 07-370, 2009 WL 5184701, at *6-7 (W.D. Pa. Dec. 22, 2009) (excluding travel time to and from forum for out-of-forum counsel).

The Court will treat travel for depositions held outside of the forum differently, as even counsel located in the forum area would have incurred travel time for those events. The Court's consideration of the relative necessity for lawyers to travel for depositions is consistent with the foregoing discussion about deposition services generally. However, while the Court is disinclined to allow a claim for multiple lawyers to be traveling on someone else's ticket or for any lawyer to charge "full freight" for any travel,[14] the Court is equally mindful that but for a professional obligation the lawyer likely would not be traveling at all, in which case the lawyer at least theoretically would have been able to enjoy other pursuits. Thus, some time-oriented compensation for travel time is fair for non-forum events in the case, though the Court is disinclined to authorize companion traveling for events ultimately attended by multiple counsel.

---

[14] Travel is often time to use for casual conversation with companions, catching up on popular reading, enjoying a much-needed cat nap, watching a movie, reading backed up email, listening to music while relaxing, or any number of other activities unrelated to advancing the status of the case (or cases) that may have prompted the travel in the first place. What travel time only very rarely is is the occasion of performing productive work on a single case for the portal-to-portal time logged for "travel." Accordingly, full-blown billing for travel time at the same rate as a professional charges for legal research, investigatory services, witness interviewing, brief writing, and the like becomes rather problematic.

"[A] court must look to the practice in the local community" to determine whether travel time should be compensated at the full rate. Planned Parenthood of Central N.J. v. Att'y Gen. of State of N.J., 297 F.3d 253, 267 (3d Cir. 2002). Here, neither side has presented any evidence whatsoever as to what the customary practice is with respect to travel time in the local community. While one case cited by both parties, a Middle District of Pennsylvania case, discusses a few Eastern District of Pennsylvania cases in which travel time was fully compensated, see Poff v. Prime Care Med., Inc., No. 1:13-CV-03066, 2016 WL 3254108, at *11 (M.D. Pa. June 14, 2016), both parties ignore other cases in this District in which fees for travel time were reduced, see, e.g., Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortgage Servs., L.P., Civil Action No. 11-6089, 2015 WL 6378581, at *4 (E.D. Pa. Oct. 22, 2015) (reducing fees in half for travel time); Haberern v. Kaupp Vascular Surgeons, Ltd., 855 F. Supp. 95, 100 (E.D. Pa. 1994) (same). And neither side has produced any evidence from the community itself to aid the Court in resolving the issue. Because the burden is squarely on Relator to show that the fees he requests are reasonable, Relator will bear the weight of this failure. Therefore, at an applied rate of 50% of the permitted rate for the travel time logged, the Court will authorize fees for the travel of two Relator counsel for any event occurring outside of the forum area, such as depositions.

IV.    "Success" or "Benefits Achieved" Factors

C&D's final challenge to the fee petition is an across-the-board 20% reduction because, in the final analysis, the Relator's counsel achieved only very little. Indeed, the Supreme Court has held that "the degree of success obtained" is the "most critical factor" in deciding whether to adjust a fee award. Hensley v. Eckerhart, 461 U.S. 424, 436 (1983) ("If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended

on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill."). "The court necessarily has discretion in making this equitable judgment." Id. See also Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 318-19 (3d Cir. 2006) (recognizing district court's discretion to award reasonable attorney's fees, including reducing those fees downward in light of limited success, and upholding reduction to fee award when plaintiff prevailed on one claim, did not benefit in any tangible way from the litigation, and received an actual damages award far below her projected total damages).

Certainly, Relator and his counsel achieved only very modest results: a $1.7 million monetary settlement payment which was about 6% of the Relator's demand in his Second Amended Complaint and roughly $200,000 more than the first settlement demand at the start of the case in 2014. The settlement has no remediation feature, either as to past product production or future manufacturing of the batteries at issue. The Government continues to purchase batteries from C&D, reportedly in increased quantities. The major benefit to the resolution of the case seems to be just that: it is concluded at last, without mounting more fees and costs and time intrusions.

C&D points out that if the Court were to subject the fee petition to the same ratio that the settlement payment bore to the latest demand ($1,700,000/$30,000,000 = 0.0567), then the permissible fee would be 5.67% of that which is now requested, that is, 5.67% of $3,278,115.99, or $185,869.18. C&D then magnanimously acknowledges that such a stiff formulaic approach risks chilling the interest of lawyers taking on such cases. Without explaining why it selected

such a discount factor, C&D then simply proposes a 20% further reduction of the fee for the lack of success achieved by Relator's counsel. The only retort offered by Relator's counsel is the accusation that C&D is "attempt[ing] to rewrite history," "attempt[ing] to re-litigate the merits," and endeavors to "spin the settlement." This final argument is only to throw blame back, writing "the size of the ultimate attorney fee award in this case is primarily a result of C&D's intransigence and scorched earth tactics." Enough with the salvos.

On balance, the Court agrees that the fee petition, even as reduced by the foregoing rulings, is out of proportion to the result arguably achieved by the efforts of counsel and the vagaries of litigation generally. However, after balancing the arguments, the applicable burdens, the Court's knowledge of the case and counsel's conduct, and the foregoing reductions, the Court concludes that the appropriate exercise of discretion is to further reduce the fee to be awarded to 90% of the permissible fee calculated once the reductions imposed in this ruling have been applied. As such, given all of the considerations appropriate here, the permitted fee can still be considered generous.

## **CONCLUSION**

The fee payable to Relator's counsel by C&D is to be reduced in accordance with the discussion contained in this Memorandum. An appropriate Order accompanies this Memorandum.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE